**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

Lisa Zahuranec,                                          Case No. 1:19cv2781

                                    **Plaintiff,**

        **-vs-**
                                                **JUDGE PAMELA A. BARKER**

CIGNA Healthcare, Inc., et al.,

                                    **Defendants**        **MEMORANDUM OPINION & ORDER**

Currently pending is Defendant Connecticut General Life Insurance Company's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. No. 23.)  Plaintiff Lisa Zahuranec filed a Brief in Opposition on May 27, 2020, to which Defendant responded on June 10, 2020.  (Doc. Nos. 25, 26.)  For the following reasons, Defendant's Motion (Doc. No. 23) is DENIED.

## I.      Procedural History

On October 24, 2019, Plaintiff Lisa Zahuranec filed a Complaint against Defendant Connecticut General Life Insurance Company (hereinafter "Cigna") in the Cuyahoga County Court of Common Pleas.  (Doc. No. 1-1.)  Therein, Plaintiff asserted a claim for breach of contract arising out of Cigna's decision to approve her for bariatric surgery under the terms of her employee welfare benefit plan.  (*Id.*)

Defendant Cigna removed the action to this Court on November 26, 2019 on the basis that complete preemption under ERISA provided federal question jurisdiction under 28 U.S.C. § 1331.  (Doc. No. 1.)  Specifically, Cigna set forth the basis of federal jurisdiction supporting removal as follows:

The basis for federal question jurisdiction is that Plaintiff's allegations and cause of action relate to Cigna's administration of Plaintiff's claim for benefits under an

employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 (as amended), 29 U.S.C. §1001, et. seq. ("ERISA"). Pursuant to 29 U.S.C. §1132(e)(1), federal courts have primary jurisdiction over these types of claims. Accordingly, Plaintiff's Ohio state law cause of action for breach of contract, as articulated in the Complaint, is completely preempted and removable to Federal Court. *See Aetna Health, Inc. v. Davila,* 542 U.S. 200 (2004); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987).

(*Id.*) Plaintiff did not move for remand.

On January 16, 2020, Cigna filed a Motion to Dismiss for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6). (Doc. No. 11.) Plaintiff filed a Brief in Opposition on February 20, 2020, to which Cigna replied on March 12, 2020. (Doc. Nos. 16, 19.)

On April 8, 2020, Plaintiff filed a First Amended Complaint, in which she added three new defendants: (1) Plan Administrator Caesars Entertainment Operating Company, Inc. (hereinafter "Caesars"), and Cigna employees (2) Rajesh Davda, M.D., and (3) Jessica Breon, R.N. (Doc. No. 21.) In the First Amended Complaint, Plaintiff asserts claims against Defendants Cigna and Caesars for breach of contract (Count I), breach of fiduciary duty (Count III), equitable estoppel (Count IV), and declaratory judgment (Count V). In addition, Plaintiff asserts a claim for "breach of duties and job responsibilities" against Defendants Davda and Breon (Count II). (*Id.*) In light of the filing of the First Amended Complaint, the Court denied Cigna's January 16, 2020 Motion to Dismiss (Doc. No. 11) as moot.

On April 29, 2020, Cigna filed a Motion to Dismiss the First Amended Complaint for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6). (Doc. No. 23.) Plaintiff filed a Brief in Opposition on May 27, 2020, to which Cigna replied on June 10, 2020.[1] (Doc. Nos. 25, 26.)

---

[1] The Court notes that, although the First Amended Complaint was filed well over 90 days ago, Plaintiff has yet to perfect service on Defendants Caesars, Davda, or Breon.

## II.      Factual Allegations

The First Amended Complaint contains the following factual allegations.  In March 2012, Plaintiff was hired as an employee of The Horseshoe Casino Company, Inc. (hereinafter "The Horseshoe Casino").  (Doc. No. 21 at ¶ 8.)  The Horseshoe Casino is "affiliated with" Defendant Caesars, which offered a Welfare Benefit Plan (hereinafter "the Plan") to Plaintiff.  (*Id*. at ¶¶ 9, 10.) Plaintiff alleges that Defendant Caesars is the Plan Administrator for this Plan, and Defendant Cigna is a Claims Administrator.  (*Id.* at ¶¶ 10, 12.)

One of the plans offered by The Horseshoe Casino was a health insurance plan offered by Defendant Cigna.  (*Id*. at ¶ 11.)  Plaintiff alleges that she accepted the health insurance plan offered by Cigna and that her Policy had an effective date of June 17, 2012.  (*Id*. at ¶¶ 16, 19.)  Plaintiff further alleges that this health insurance plan is a "valid enforceable contract between the parties" that has "various coverage policies which dictate the rights and obligations of CIGNA Healthcare and Mrs. Zahuranec regarding certain medical services and/or procedures."  (*Id.* at ¶¶ 21, 22.)  One of these policies is Coverage Policy Number 0051 for Bariatric Surgery.[2]  (*Id.* at ¶ 23.)  In relevant part, Coverage Policy Number 0051 provides as follows:

> • Body mass index (BMI) of 40 or greater or a BMI of 35-39.9 with at least one clinically significant obesity-related ailment (co-morbidity) such as degenerative joint disease in a weight-bearing joint, Type 2 diabetes, poorly controlled hypertension, severe obstructive sleep apnea, or pulmonary hypertension.
>
> • Failure of a medical management including evidence of active participation within the last 12 months in one physician-supervised or registered dietician supervised weight-management program for a minimum of 3 consecutive months (89+ days) with monthly documentation of all of the following:

---

[2] While the First Amended Complaint states that a copy of the Coverage Policy 0051 is "attached hereto as Exhibit 1," the docket reflects that Plaintiff did not attach any exhibits to the First Amended Complaint.  (Doc. No. 21 at ¶ 23.) However, the Court notes that a copy of Coverage Policy Number 0051 is attached as an exhibit to the original Complaint and is located at Doc. No. 1-1 at PageID#s 18-66.

3

       o Weight;

       o Current dietary program;

       o Physical activity (e.g. exercise program)

• A thorough multidisciplinary evaluation within the previous 6 months that includes all of the following:

       o An evaluation by a bariatric surgeon recommending surgical treatment, including a description of the proposed procedure(s) and all of the associated current CPT codes;

       o A separate medical evaluation from a physician other than the surgeon recommending surgery, that includes both a recommendation for bariatric surgery as well as a medical clearance for bariatric surgery;

       o Unequivocal clearance for bariatric surgery by a mental health provider;

       o Nutritional evaluation by a physician or registered dietician.

(*Id.* at ¶ 27.)  *See also* Doc. No. 1-1 at PageID#s 18-19.

On January 23, 2013, Plaintiff visited a medical provider to seek intervention for weight loss through bariatric surgery.  (Doc. No. 21 at ¶ 24.)  At that time, she weighed 196 pounds and had a Body Mass Index ("BMI") under 40.0.  (*Id.* at ¶ 25.)  On February 14, 2013, after conducting testing, and examinations and "other evaluations to determine any possible co-morbidities," Plaintiff's medical provider submitted a request to Cigna for pre-authorization for bariatric surgery.  (*Id.* at ¶¶ 26, 29.)  Cigna, through its employee Defendant Jessica Breon, R.N., declined to provide coverage because Plaintiff had not yet been employed by The Horseshoe Casino for one year, as required by her health insurance policy.  (*Id.* at ¶¶ 28, 30.)

On August 31, 2013, Plaintiff's medical providers submitted supplemental documentation to Cigna in an attempt to obtain pre-authorization for the bariatric surgery.  (*Id.* at ¶ 35.)  Defendants Dr. Davda and Nurse Breon were assigned to review Plaintiff's file.  (*Id.* at ¶ 33.)  Coverage was

4

again declined, this time on the basis that Plaintiff had failed to submit documentation demonstrating a failure of medical management; i.e., evidence of active participation within the last 12 months in a supervised weight management program for a minimum of three consecutive months.  (*Id*. at ¶ 36.) Plaintiff alleges that "the preliminary determinations of whether the documentation provided by Mrs. Zahuranec's medical provider meets the requirements for CIGNA Healthcare policy were made by a nurse." (*Id*. at ¶ 37.)  She further alleges that "[n]o physician reviewed [her] records to determine whether she qualified for a bariatric surgical procedure." (*Id*. at ¶ 38.)

On October 25, 2013, Plaintiff's medical provider again supplemented the previously provided documents to seek pre-authorization.  (*Id*. at ¶ 39.)  Plaintiff alleges that, among other things, "[t]he medical records and evidence produced to CIGNA Healthcare . . . included: (1) a registered dietician visit of February 1, 2013; (2) registered dietician visit of March 15, 2013, and (3) a registered dietician visit of October 22, 2013." (*Id.* at ¶ 40.)  Plaintiff alleges that this medical evidence "did not strictly fulfill the requirements of" Coverage Policy Number 0051 because it did not demonstrate "a minimum of 3 consecutive months (89+ days)" of participation in a supervised weight management program, "as February, March, and October [2013] are nowhere near consecutive." (*Id.* at ¶ 41.)  In addition, Plaintiff claims she did not fulfill Coverage Policy Number 0051's requirement that she have a clinically significant obesity-related ailment.  (*Id*. at ¶¶ 48, 49.)  Lastly, Plaintiff alleges that she further failed to meet the requirements of this Policy because (1) she did not have a thorough multidisciplinary evaluation within the previous 6 months; and (2) her mental health provider had determined she was experiencing depression, "which is generally regarded as a condition which precludes approval of such a bariatric procedure." (*Id*. at ¶¶ 51- 54.)

5

In light of the above, Plaintiff alleges that she should not have been pre-authorized for bariatric surgery.  (*Id*. at ¶¶ 43, 46, 49.)  Instead, Plaintiff alleges that "she should have been referred to a registered dietician for a thorough attempt [at] non-surgical weight management."  (*Id*. at ¶ 56.) However, on November 5, 2013, Cigna (through Defendants Davda and Breon) nonetheless approved Plaintiff for bariatric surgery.  (*Id*. at ¶¶ 43, 50.)  Had Cigna not authorized the surgery, Plaintiff alleges that she would "never have been able to pay for the procedure and therefore would never have undergone" it.  (*Id*. at ¶ 45.)

Plaintiff underwent bariatric surgery (i.e., a "laparoscopic sleeve gastrectomy") on December 17, 2013.  (*Id*. at ¶ 57.)  Unfortunately, she suffered "severe complications" as a result of this procedure.  (*Id*. at ¶ 58.)  Plaintiff alleges that "[a]s a direct and proximate result of CIGNA Healthcare and Caesars Entertainment Operating Company, Inc. breaching the terms of the health insurance policy and specifically breaching the terms of the coverage policy number 0051, Mrs. Zahuranec suffered injuries, damages, loss of ability to work, lost past and future wages, incurred extensive medical expenses, loss of enjoyment of life, inability to carry on activities of daily living, and a greatly diminished life expectancy."  (*Id*. at ¶ 60.)

Several years after her surgery, in June 2018, Cigna (through third-party administrator Conduent) asserted a claim for reimbursement of the medical expenses paid on behalf of Plaintiff with respect to her bariatric surgery.[3]  (*Id*. at ¶ 64.)  Plaintiff alleges that she "should not be forced to

---

[3] In its Motion to Dismiss, Defendant Cigna states that Plaintiff filed a medical malpractice action in August 2017 in the Cuyahoga County Court of Common Pleas against the Cleveland Clinic Foundation and the physicians who performed her bariatric surgery.  *See Lisa Zahuranec, et al. v. Tomacz Rogula, et al*., Cuyahoga County Court of Common Pleas Case No. CV-17-885085.  (Doc. No. 23-1 at p. 6.)  According to Cigna, the parties in that action settled and Plaintiff filed a Notice of Dismissal with prejudice on June 20, 2019.  (*Id*. at p. 7.)  Cigna states that it thereafter filed a lien in the state court action upon the proceeds of Plaintiff's settlement recovery in the amount of the benefits paid to Plaintiff under the Plan in connection with her laparoscopic sleeve gastrectomy.  (*Id*.)

6

re-pay monies expended by CIGNA which should never have been incurred by their violations of the Plan, ERISA, the health insurance guidelines, and their fiduciary duties." (*Id.* at ¶ 66.)

### III.    Standard of Review

Under Fed. R. Civ. P. 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the Complaint in the light most favorable to the plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007)).

The measure of a Rule 12(b)(6) challenge — whether the Complaint raises a right to relief above the speculative level — "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir.2008) (quoting in part *Twombly*, 550 U.S. at 555–556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific

facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera*, 551 F.3d at 466 (quoting in part *Erickson v. Pardus*, 551 U.S. 89 (2007)) (quoting *Twombly,* 127 S.Ct. at 1964). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 679.

## IV.    Analysis

### A.    Matters Considered in Resolving Motion to Dismiss

As a preliminary matter, the Court considers the materials that it may consider in resolving Cigna's Motion to Dismiss.  Cigna argues that the Court should consider the following documents outside the pleadings.  First, Cigna asserts that "this Court may consider the 2012 and 2013 Summary Plan Descriptions ('SPD') for the Caesars Entertainment Operating Company, Inc. Welfare Benefit Plan (i.e., the Plan), which are the Plan documents that govern Plaintiff's eligibility for the benefits at issue in this action and which are attached as Exhibit A to the Declaration of Debra Glynn dated January 6, 2020."  (Doc. No. 23-1 at p. 9.)  *See* Doc. Nos. 11-2, 11-3.  Second, Cigna argues the Court may also consider Plaintiff's complaint and notice of dismissal that were in filed in her state court medical malpractice action, "as those documents are in the public record and concern a closely related case."  (Doc. No. 23-1 at p. 10.)  *See* Doc. Nos. 23-2, 23-3.  Finally, Cigna asserts that the Court may consider "the Notice of Lien sent to Plaintiff's counsel, as the lien is referenced in the Amended Complaint and is central to Plaintiff's allegations that the Plan and Cigna should be estopped from enforcing the lien and that this Court should declare that the Plan and Cigna have no right of recovery

8

against Plaintiff's settlement proceeds in the State Court [medical malpractice] Action."  (Doc. No. 23-1 at p. 10.)  *See* Doc. No. 23-4.

In her Opposition, Plaintiff argues, summarily and without further explanation, that "Plaintiff has attached to her complaint Coverage Policy Number [0051] which [she] believes is the sole document which the Court should review with regard to this Motion to Dismiss and not the entire contents of the Caesars Entertainment Operating Company, Inc. Welfare Benefit Plan."  (Doc. No. 25 at p. 5.)

In ruling on a Rule 12(b)(6) motion, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett,* 528 F.3d at 430.  *See also Brent v. Wayne County Dep't of Human Services*, 901 F.3d 656, 694 (6th Cir. 2018) (same); *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).  When a court takes judicial notice of matters outside the pleadings, it may only consider the existence of these documents but not the truth of the specific factual allegations contained therein, as such factual allegations are subject to reasonable dispute.  *See In re Omnicare, Inc. Securities Litigation,* 769 F.3d 455, 467 (6th Cir. 2014) ("Federal Rule of Evidence 201 allows a court to take notice of facts not subject to reasonable dispute.  Under this standard, we could take notice only of the fact that Omnicare filed the Audit Committee Charter and what that filing said, but we could not consider the statements contained in the document for the truth of the matter asserted, even at the motion-to-dismiss stage."); *United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012) (explaining that "[j]udicial notice is only appropriate if 'the matter [is] beyond reasonable controversy.... The rule

proceeds upon the theory that ... dispensing with traditional methods of proof [should only occur] in clear cases.'") (quoting Fed. R. Evid. 201(b) advisory committee's note).

Here, the Court finds that it may consider both Coverage Policy 0051 and the 2012 - 2013 Summary Description of the Plan because they are referred to in the First Amended Complaint and are central to Plaintiff's claims. Specifically, the First Amended Complaint expressly references the Caesars Entertainment Operating Company, Inc. Welfare Benefit Plan generally, and Coverage Policy 0051 in particular. (Doc. No. 21 at ¶¶ 10-16. 27.) Both documents are central to Plaintiff's claims that Cigna improperly authorized her bariatric surgery. In addition, Plaintiff alleges that Cigna requested reimbursement pursuant to the terms of the Plan and seeks a declaratory judgment that she is not required to reimburse Cigna. (*Id.* at ¶¶ 64-68.) Cigna notes that the Plan provisions relating to subrogation/right of reimbursement are set forth in the 2012 - 2013 Summary Description of the Plan. (Doc. Nos. 23-1 at pp. 5-6; Doc. No. 11-2.) Accordingly, the Court may consider these Plan documents in resolving the instant Motion to Dismiss. *See, e.g., Lowe v. Lincoln National Life Ins. Co.,* 821 Fed. Appx. 489, fn 1 (6th Cir. 2020) ("Accordingly, we consider the disability insurance policy and the various letters that Lincoln sent to Lowe, which are referred to in the complaint, are central to Lowe's claims, and are appended to Lincoln's motion to dismiss.")

For similar reasons, the Court finds that it may consider the Notice of Lien attached to Cigna's Motion to Dismiss. (Doc. No. 23-4.) This lien is referenced in the First Amended Complaint and is central to Plaintiff's claims for equitable estoppel and declaratory judgment. (Doc. No. 21 at ¶¶ 64, 68.) Indeed, in the First Amended Complaint, Plaintiff expressly "requests that this Court enter judgment determining the rights, duties, and obligations of the parties with regard to the purported

lien which was first submitted to Plaintiff in July 2018." (*Id.* at ¶ 68.)  Accordingly, the Court may consider the Notice of Lien in resolving Cigna's Motion to Dismiss.

Finally, the Court finds that it may take judicial notice of the Plaintiff's filings in her state court medical malpractice action.  With regard to consideration of public records in the context of a Rule 12(b)(6) motion, the Sixth Circuit has explained as follows:

> All circuits to consider the issue have noted that a court may take judicial notice of at least some documents of public record when ruling on a Rule 12(b)(6) motion. *See, e.g., New Eng. Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir.2003); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, Inc., 998 F.2d 1192, 1197 (3d Cir.1993); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir.1991). The majority of these courts, however, have held that the use of such documents is proper only for the fact of the documents' existence, and not for the truth of the matters asserted therein.  *See, e.g., Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir.1996); *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354–55 (7th Cir.1995).  Further, in general a court may only take judicial notice of a public record whose existence or contents prove facts whose accuracy cannot reasonably be questioned.  *See, e.g.*, Fed.R.Evid. 201(b)(2); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir.1997) (collecting cases).  Despite the fact that the majority of such cases dealt with the public filings of private corporations or of judicial proceedings, at least one court has noted that even a judicial opinion may not be relied upon, in a motion to dismiss, for the truth of the facts within.  *Lum v. Bank of Am.*, 361 F.3d 217, 222 n. 3 (3d Cir.2004).  In general, the majority of the cases which do not allow a court to take judicial notice of the contents of a public record do so because there is no way for an opposing party, prior to the issuance of the court's decision, to register his or her disagreement with the facts in the document of which the court was taking notice. *See, e.g., Hennessy*, 69 F.3d at 1354–55. **Thus, in order to preserve a party's right to a fair hearing, a court, on a motion to dismiss, must only take judicial notice of facts which are not subject to reasonable dispute.**

*Passa v. City of Cleveland*, 123 Fed. Appx. 694, 697 (6th Cir. 2005) (emphasis added).  *See also Platt v. Board of Commissioners on Grievances and Discipline of the Ohio Supreme Court*, 894 F.3d 235, 245 (6th Cir. 2018).  In light of the above, the Court will take judicial notice of the Plaintiff's state court filings but will not consider the statements contained in those documents for the truth of the matters asserted.

11

### B.    Preemption

In its Motion to Dismiss, Cigna argues that Plaintiff's state law claims for breach of contract, breach of fiduciary duty, equitable estoppel, and declaratory judgment should be dismissed as a matter of law because they are both expressly and completely preempted pursuant to ERISA §§ 514(a) and 502(a)(1)(B).  (Doc. No. 23-1 at pp. 2, 10-16.)  With regard to express preemption, Cigna argues that Plaintiff's state law claims should be dismissed because they "relate to" the Plan at issue under ERISA § 514(a).  Specifically, Cigna argues that these claims are "all based on actions undertaken by Cigna in connection with its administration of Plaintiff's claim for healthcare benefits under the ERISA-governed Plan and in connection with its enforcement of the Plan's subrogation rights under the express terms of the Plan."  (*Id*. at p. 12.)  With regard to complete preemption, Cigna argues that Plaintiff's state law claims "fall within the scope of ERISA's exclusive civil enforcement scheme because they 'relate to' Cigna's administration of Plaintiff's claim for benefits under the Plan and to Cigna's enforcement of the Plan's subrogation rights under the express terms of the Plan with respect to the State Court [medical malpractice] action settlement proceeds."  (*Id*. at p. 13.)  Thus, Cigna argues (somewhat curiously, as discussed below) that Plaintiff's claims are completely preempted and, therefore, both "subject to removal" and subject to dismissal with prejudice.  (*Id*. at pp. 13, 15, 17.)

In response, Plaintiff argues that her claims are not expressly preempted under ERISA § 514(a).  (Doc. No. 25 at pp. 5-7.)  She maintains that "[b]y undertaking to pay something it never should have, was not medically necessary pursuant to the terms of the benefits plans, and was not within the scope of the benefits plan, Cigna went outside of the bounds of ERISA and breached its duties to Mrs. Zahuranec, and all other plan participants for paying medical expenses which it never

12

should have paid." (*Id.* at p. 5.) Plaintiff asserts that "Cigna's unilateral breach of fiduciary duties and fraudulent approval of the medical claim on behalf of Mrs. Zahuranec far exceed the 'relate to' language for preemption by ERISA." (*Id.*) Lastly, relying on *Smith v. Texas Children's Hospital*, 84 F.3d 152 (5th Cir. 1996), Plaintiff argues that fraudulent inducement claims are not preempted by ERISA. (*Id.* at pp. 6-7.) She maintains that "by fraudulently misrepresenting that Mrs. Zahuranec was medically qualified for the bariatric surgical procedure, and that the medical expenses were a covered expense by the plan, Cigna induced Mrs. Zahuranec to undergo the surgery," and that this claim is therefore not preempted.[4] (*Id.* at p. 7, 8.)

A review of the parties' briefing reveals some measure of confusion regarding the scope and applicability of the doctrines of express and complete preemption under ERISA. The Court will therefore begin with an overview. "ERISA is a federal statute that sets up a regulatory regime to protect people participating in employee benefit plans." *K.B. by and through Qassis v. Methodist Healthcare,* 929 F.3d 795 (6th Cir. 2019). *See also* 29 U.S.C. § 1001(b). "This regime is the enforcement arm of ERISA, which ensures that employee benefit plan administrators abide by their obligations." *Id.* "The 'comprehensive civil enforcement scheme' in 29 U.S.C. § 1132 'carefully' sets forth who can sue, when they can sue, and what remedies they can get." *Id. quoting Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53–54 (1987) (citing 29 U.S.C. § 1132*; Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 145 (1985)). Plan participants and beneficiaries are able "to recover benefits

---

[4] In apparent contradiction to her argument that her claims are not completely preempted, Plaintiff also appears to argue that her claims are, in fact, properly brought under ERISA § 502(a)(3), which provide a causes of action for a plaintiff seeking: (1) to enjoin any act or practice which violates any provision of ERISA Title I or the terms of the benefit plan, and (2) to obtain other appropriate equitable relief to address such violations, to enforce any provision of Title I, or to enforce the terms of the plan. 29 U.S.C. § 1132(a)(3). Plaintiff argues that "[w]hen Cigna approved Mrs. Zahuranec's procedure it was in direct contravention of the terms of the coverage language and therefore violates the terms of the plan and ERISA." (Doc. No. 25 at p. 6.) Thus, Plaintiff argues that she is able to bring the present action under Section 502(a)(3). (*Id.*)

due to [them] under the terms of [their] plan, to enforce [their] rights under the terms of the plan, or

to clarify [their] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

The Supreme Court has recognized that this carefully crafted scheme "would be completely

undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state

law that Congress rejected in ERISA." *Pilot Life*, 481 U.S. at 54. "Thus, the purpose of ERISA

preemption is to guarantee that all claims based on ERISA are brought where and how Congress

specified in the ERISA statute." *K.B.,* 929 F.3d at 800. Otherwise, plaintiffs could seek different

remedies than those Congress specified. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 n.4 (2004)

("A state cause of action that provides an alternative remedy to those provided by the ERISA civil

enforcement mechanism conflicts with Congress' clear intent to make the ERISA mechanism

exclusive.")

"There are two forms of ERISA preemption: express preemption (which applies broadly) and

complete preemption (which applies narrowly)." *K.B.,* 929 F.3d at 800. *See also Lowe*, 821 Fed.

Appx. at 491. Set forth in 29 U.S.C. § 1144(a) (also referred to as ERISA § 504(a)), ERISA's express-

preemption clause preempts "any and all State laws insofar as they may now or hereafter *relate to*

any employee benefit plan described in section 1003(a) of this title and not exempt under section

1003(b) of this title." 29 U.S.C. § 1144(a) (emphasis added). "ERISA's express preemption provision

is strong." *K.B.*, 929 F.3d at 800. However, there are limits to preemption under this provision. As

the Sixth Circuit recently explained:

> By itself, the phrase 'relate to' does not tell us much. As the Supreme Court has
> recognized, 'uncritical literalism' would arise '[i]f 'relate to' were taken to extend to
> the furthest stretch of its indeterminacy.' *N.Y. State Conference of Blue Cross & Blue
> Shield Plans v. Travelers Ins. Co*., 514 U.S. 645, 655–56, 115 S.Ct. 1671, 131 L.Ed.2d
> 695 (1995). *** [Therefore,] [w]e subsequently added that the express-preemption

14

inquiry should 'consider the kind of relief that plaintiffs seek, and its relation to the pension plan.' *Ramsey v. Formica Corp.*, 398 F.3d 421, 424 (6th Cir. 2005).

*Lowe,* 821 Fed. Appx. at 492.  Specifically, in *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 698 (6th Cir. 2005) ("*PONI*"), the Sixth Circuit set forth three specific classes of state laws that are preempted by ERISA:

> ERISA preempts state laws that (1) 'mandate employee benefit structures or their administration;' (2) provide 'alternate enforcement mechanisms;' or (3) 'bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself.'

*Id.* (quoting *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1468 (4th Cir. 1996)).  Depending on the case, this analysis may consider whether the state law itself is preempted by ERISA, or "whether a state-law *claim* relates to plans covered by ERISA."  *Briscoe v. Fine*, 444 F.3d 478, 497 (6th Cir. 2006)(emphasis added).  *See also Lowe*, 821 Fed. Appx. at 492.

Complete preemption, on the other hand, "is more aptly described as a 'jurisdictional' doctrine."  *Hogan v. Jacobson*, 823 F.3d 872, 879 (6th Cir. 2016) (quoting *Laffredo v. Daimler, AG*, 500 Fed. Appx. 491, 500 (6th Cir. 2012) (concurring opinion of Moore, J.)).  The Sixth Circuit has characterized "complete preemption" as follows:

> Complete preemption is 'a doctrine only a judge could love,' *Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073, 1075 (7th Cir.1992), and one only judges could confusingly name. More productively thought of as a jurisdictional rather than a preemptive rule, complete preemption amounts to an exception to the well-pleaded complaint rule that **converts a state-law claim that could have been brought under § 1132 into a federal claim,** *Aetna Health Inc*., 542 U.S. at 209, 124 S.Ct. 2488, **and makes the recharacterized claims removable to federal court,** *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 67, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Section 1132 creates ERISA's civil action, permitting claims by a beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). **Complete preemption applies when a plaintiff dresses up a claim for benefits under [an ERISA] plan in state-law clothing because ERISA has "so**

15

> fill[ed] every nook and cranny" of the area "that it is not possible to frame a complaint under state law." *Bartholet*, 953 F.2d at 1075.

*Loffredo*, 500 Fed. Appx. at 495 (emphasis added).  Stated differently, "[a] state suit may be completely preempted (and subject to removal) if it asserts a state law cause of action to enforce the terms of an ERISA plan and that suit conflicts with or duplicates the federal cause of action provided in ERISA's enforcement provision, 29 U.S.C. § 1132(a)(1)(B)." *K.B.*, 929 F.3d at 800 (citing *Davila*, 542 U.S. at 214 n.4).  In effect, because "Congress has blotted out (almost) all state law on the subject of" ERISA plans, "a complaint about [such a plan] rests on federal law no matter what label its author attaches." *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1075 (7th Cir. 1992).

The Sixth Circuit has acknowledged that "'[o]ur prior ERISA preemption cases have not always clearly differentiated between" express and complete preemption.  *Hogan,* 823 F.3d at 881 (quoting *Loffredo,* 500 Fed. Appx. at 500.)  "The distinction, [however], is clear: 'completely preempted claims 'fall within the scope' of ERISA's civil enforcement regime, and expressly preempted claims interfere with that regime." *Id.*  (quoting *Davila*, 542 U.S. at 221).  Perhaps as a result of this distinction, the consequences of express versus complete preemption are different.  "[E]xpress preemption under 1144 is a defense; it is grounds for dismissal but not for removal." *Laffredo,* 500 Fed. Appx. at 500 (Moore, J., concurring opinion).  *See also Hogan,* 823 F.3d at 879 ("Express preemption under § 1144 does not provide a basis for removal because it creates only a traditional preemption defense.")

Complete preemption, on the other hand, is grounds for removal but *not* grounds for dismissal. *Loffredo,* 500 Fed. Appx. at 500 (Moore, J., concurring opinion).  *See also Lowe*, 821 Fed. Appx. at 494 ("But, '[c]omplete preemption under 1132(a) is not grounds for dismissal.'") (quoting *Loffredo*, 500 Fed. Appx. at 501).  This is because "state-law claims that are completely preempted are, in fact,

16

federal claims." *Loffredo,* 500 Fed. Appx. at 501 (Moore, J., concurring opinion).  "If an ostensible state-law claim is in fact an ERISA claim, it cannot be dismissed as preempted by ERISA; that is, ERISA cannot preempt an ERISA claim." *Id.*  Or, as another district court within this Circuit aptly stated, "a defendant cannot remove an action on the basis that it states a claim under ERISA, and then move to dismiss on the basis that it is preempted by ERISA, the very statute which gave it life.... ERISA cannot be both the match which sparks a claim's fire and the bucket of water used to extinguish it." *Ackerman v. Fortis Benefits Ins. Co.*, 254 F. Supp. 2d 792, 817 (S.D. Ohio 2003).  *See also Southern Ohio Medical Center v. Linne*, 2020 WL 1149814 at * 2 (S.D. Ohio March 10, 2020) (same); *Rizik v. Lincoln National Life Ins Co.,* 2014 WL 1048220 at * 3 (E.D. Mich. March 18, 2014) ("Contrary to Defendant's argument that the court may dismiss Plaintiff's breach of contract claim, complete preemption transforms the state claim into an ERISA claim and does not warrant dismissal."); *Johnson v. Décor Fabrics, Inc.*, 250 F.R.D. 323, 327 (M.D. Tenn. 2008) ("[B]ecause complete preemption, a basis for federal subject matter jurisdiction, acts to transform state causes of action into federal causes of action, it is not a basis for dismissal, absent a defect in the transformed federal causes of action themselves.")

Instead of dismissing completely preempted ERISA claims, courts in this Circuit generally follow the "prevailing practice" in such a case, which "is to grant ... leave to file an amended complaint, recasting those claims (which, despite their state-law language, are federal claims) in the language of ERISA." *Erbaugh v. Anthem Blue Cross & Blue Shield*, 126 F. Supp. 2d 1079, 1082 (S.D. Ohio 2000) (quoting *B–T Dissolution, Inc. v. Provident Life and Accident Ins. Co.*, 101 F. Supp. 2d 930, 932 n.3 (S.D. Ohio 2000)).  *See also Richie v. Hartford Life &Acc. Ins. Co.*, 2010 WL 785354, at *6 (S.D. Ohio Mar. 5, 2010) (finding that giving plaintiffs with completely preempted claims leave

17

to amend their complaint was the "better course"); *Estate of Colbert v. Prudential Ins. Co.*, 2013 WL 6048753 at * 4 (N.D. Ohio Nov. 14, 2013) ("When a Plaintiff's claim is completely preempted, he has the opportunity to amend his federal complaint to re-plead the claim to conform to ERISA"). *See also Loffredo*, 500 Fed. Appx. at 500 ("Because state-law claims that are completely preempted are, in fact, federal claims, the court should treat them as such, evaluating them as ERISA claims and, unless doing so would be futile, granting the plaintiff leave to amend the complaint to re-plead those claims to conform with ERISA.") (Moore, J., concurring opinion).

Here, Cigna seeks to dismiss Plaintiff's state claims with prejudice on the basis of both express preemption and complete preemption. As discussed above, however, complete preemption is not grounds for dismissal. *See, e.g.*, *Lowe*, 821 Fed. Appx. at 494; *Southern Ohio Medical Center*, 2020 WL 1149814 at * 2; *Rizik*, 2014 WL 1048220 at * 3. Where both doctrines are argued in the context of a motion to dismiss, courts will often evaluate express preemption first because an analysis of complete preemption would be moot in the event a plaintiff's claims are subject to dismissal under the doctrine of express preemption. *See, e.g., Lowe*, 821 Fed. Appx. at 492; *Loffredo*, 500 Fed. Appx. at 495-496. In those cases, however, there was an independent basis for federal jurisdiction, such as diversity jurisdiction (*Lowe*, 821 Fed. Appx. at 492) or jurisdiction under CAFA (*Loffredo*, 500 Fed. Appx. at 495-496).

By contrast, in the instant case, the sole basis for federal subject matter jurisdiction identified in Cigna's Notice of Removal is complete preemption under 29 U.S.C. § 1132(a). *See* Doc. No. 1 at ¶ 6 ("Plaintiff's Ohio state law cause of action for breach of contract, as articulated in the Complaint, is completely preempted and removable to Federal Court.") In her Brief in Opposition to Cigna's Motion to Dismiss, Plaintiff argues generally that her state law claims are not completely pre-empted.

18

Thus, the Court must begin with an analysis of complete preemption because it implicates this Court's subject matter jurisdiction over the instant action.[5]

It is well established that "[t]he existence of subject matter jurisdiction is determined by examining the complaint as it existed at the time of removal." *Harper v. AutoAlliance Intern., Inc*., 392 F.3d 195, 210 (6th Cir. 2004). *See also Cromwell v. Equicor-Equitable HCA Corp*., 944 F.2d 1272, 1276 (6th Cir. 1991). At the time of removal, Plaintiff's Complaint stated one state law claim for breach of contract. The Court, therefore, must first evaluate whether Plaintiff's breach of contract claim, as set forth in the original Complaint, is completely preempted.[6] If it is not, then this Court lacks subject matter jurisdiction over the instant action and remand to state court would be required. *See Probus v. Charter Comms., LLC*, 234 Fed. Appx 404, 406 (6th Cir. 2007) (finding that, when a notice of removal is jurisdictionally deficient, a district court is required to remand the case even

---

[5] This approach is consistent with the Sixth Circuit's discussion in *Brigolin v. Blue Cross Blue Shield of Michigan*, 516 Fed. Appx. 532, fn 3 (6th Cir. 2013). In that case, the plaintiffs brought a state law claim for breach of contract alleging that the denial of coverage under their health insurance plan violated their legally binding agreements with defendant Blue Cross Blue Shield. The district court found the claim was both completely pre-empted under Section 1132(a)(1)(B) and expressly preempted under Section 1144. On appeal, the Sixth Circuit found that the district court correctly found that the claim was completely preempted but that express preemption did not apply, explaining as follows: "The district court was correct as to the application of § 1132(a), but § 1144 has no bearing here. ERISA can preempt state-law claims either by way of complete preemption under § 1132(a) or express preemption under § 1144. If a claim is completely preempted under § 1132(a), the suit containing those claims may be removed to federal court because the completely preempted state-law claim 'arises under' federal law, vests the district court with federal-question jurisdiction, and authorizes an amendment of the complaint to attempt statement of an ERISA claim. *Wright v. Gen. Motors Corp*., 262 F.3d 610, 613 (6th Cir.2001). Express preemption under § 1144, on the other hand, covers a claim that 'relates to' an employee benefit plan, but—because it does not fall within ERISA's civil enforcement regime—does not provide ERISA jurisdiction and is simply a defense that is grounds for dismissal, not removal. *See id*. at 614–15; *Warner v. Ford Motor Co*., 46 F.3d 531, 533–35 (6th Cir.1995) (*en banc*). The district court correctly concluded that the ERISA plan participants' state-law claim could be construed as a claim for benefits under ERISA which the court had jurisdiction to hear. But § 1144 does not apply. If it did, the district court would lack jurisdiction to consider the claim on its merits." *Id*. at fn 3.

[6] The Court notes that Plaintiff's breach of contract claim as set forth in the First Amended Complaint is identical in all relevant respects to the breach of contract claim in Plaintiff's original Complaint. Thus, the Court's analysis of whether Plaintiff's breach of contract claim is completely preempted under the original Complaint is equally applicable to the breach of contract claim in the First Amended Complaint, as against Defendant Cigna.

absent a motion to remand); *Lexington-Fayette Urban Cty. Gov't Civil Comm'n v. Overstreet*, 115 Fed. Appx 813, 817-18 (6th Cir. 2004) (district court erred by failing to remand *sua sponte* for lack of federal-question removal jurisdiction).  Indeed, as the Sixth Circuit recently explained, "federal courts must catch jurisdictional defects at all stages of a case, even when substantial resources have already been invested in it." *In re DePuy Orthopaedics*, 953 F.3d. 890, 892 (6th Cir. 2020).

Accordingly, the Court will first examine whether Plaintiff's original breach of contract claim is completely preempted under Section 1132(a)(1)(B).

### 1.      Complete Preemption – Breach of Contract Claim

Section 1132(a) of ERISA allows a "participant" or "beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B). As noted above, "Section 1132(a) of ERISA completely preempts 'any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy' because such actions 'conflict[ ] with the clear congressional intent to make the ERISA remedy exclusive.'" *Milby v. MCMC LLC*, 844 F.3d 605, 609 (6th Cir. 2016) (quoting *Hogan*, 823 F.3d at 879).  However, "claims that stem from a duty that 'is not derived from, or conditioned upon, the terms' of an ERISA plan are not completely preempted."  *Id.* (quoting *Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 614 (6th Cir. 2013)).

The Supreme Court has "articulated a two-prong test to determine whether a claim falls in the category that is completely preempted or in the category not preempted."  *Id.* at 610.  Under this test, a claim is completely preempted when "(1) the plaintiff complains about the denial of benefits to which he is entitled only because of the terms of an ERISA-regulated employee benefit plan; and (2)

the plaintiff does not allege the violation of any legal duty (state or federal) independent of ERISA or the plan terms." *Id.* (quoting *Gardner,* 715 F.3d at 613).  By its plain terms, "'[t]he two-prong[ed] test of *Davila* is in the conjunctive.  A state-law cause of action is preempted by § [1132](a)(1)(B) only if both prongs of the test are satisfied.'"  *Gardner*, 715 F.3d at 613 (quoting *Marin Gen. Hosp. v. Modesto & Empire Traction Co*., 581 F.3d 941, 947 (9th Cir.2009)).

To determine whether a claim satisfies the first prong of the *Davila* test, courts look beyond the "label placed on a state law claim" and instead ask "whether in essence such a claim is for the recovery of an ERISA benefit plan." *Hogan*, 823 F.3d at 880 (quoting *Peters v. Lincoln Elec. Co*., 285 F.3d 456, 469 (6th Cir. 2002)).  A claim "likely falls within the scope of § 1132 when the only action complained of is a refusal to provide benefits under an ERISA plan and the only relationship between the plaintiff and defendant is based on the plan." *Id.* (quoting *Davila*, 542 U.S. at 211).

Here, Cigna argues the first prong of the *Davila* test is met because Plaintiff's state law claims (including her breach of contract claim) are based on the terms of the ERISA-regulated Plan at issue. In this regard, Cigna notes that Plaintiff alleges that (1) she was a participant in the Plan; and (2) Cigna breached the terms of that Plan by approving her claim for laparoscopic sleeve gastrectomy even though she did not meet the conditions for such approval under the terms of Coverage Policy Number 0051.  Based on these allegations, Cigna asserts that Plaintiff's breach of contract claim is completely preempted because it is "inextricably intertwined with the Plan;" i.e., "in order to rule on Plaintiff's claim, the Court would have to refer to and construe the terms of the Plan."  (Doc. No. 23-1 at p. 15.)

Plaintiff does not acknowledge or address the two-pronged test set forth in *Davila*, or any of the Sixth Circuit cases that have applied it.  Rather, Plaintiff simply argues that "due to the fraudulent

activities of Cigna, the misrepresentation, exceeding the scope of the benefits plan, the breach of the fiduciary duties of the plan, and other improper actions, Plaintiff's claims are not subject to preemption and Plaintiff's claim should not be dismissed." (Doc. No. 25 at pp. 7-8.)

At the outset, the Court acknowledges the unusual circumstances presented by the instant case. In the vast majority of ERISA preemption cases, a plaintiff sues an employee benefit provider for *denying* benefits that she believes are owed under the Plan. Here, however, Plaintiff alleges that Cigna "breached the terms of the insurance policy by authorizing [her] medical provider to perform a surgical procedure for which she does not qualify." (Doc. No. 1-1 at ¶ 62.) In other words, Plaintiff is alleging that Cigna breached the terms of the healthcare insurance policy by improperly *approving* the benefits that she requested under the Plan. The parties do not direct this Court's attention to (and this Court is not aware of) any binding authority addressing the applicability of complete preemption under these particular circumstances.

For the following reasons, the Court finds that Plaintiff's breach of contract claim is completely preempted. As set forth above, Section 1132(a)(1)(B) allows a "participant" or "beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. 1132(a)(1)(B). Under the first prong of the *Davila* test (as articulated by the Sixth Circuit), a claim is completely preempted under this provision when "the plaintiff complains about the denial of benefits to which he is entitled only because of the terms of an ERISA-regulated employee benefit plan." *Milby*, 844 F.3d at 610. *See also Gardner,* 715 F.3d at 613. Here, Plaintiff is not complaining that Cigna denied payment for her bariatric surgery. Thus, at first blush, it would

appear that she does not satisfy the first prong of the *Davila* test because she is not "complaining about the denial of benefits" within the usual meaning of that phrase.

However, Section 1132(a)(1)(B) also expressly permits a plan participant or beneficiary generally to "enforce [her] rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). *See Davila*, 542 U.S. at 210 ("A participant or beneficiary can also bring suit generically to 'enforce his rights' under the plan.") In *Davila*, the Supreme Court explained that complete preemption applies where "an individual, at some point in time, could have brought his claim under" Section 1132(a)(1)(B), and there is no other independent legal duty that is implicated by a defendant's actions. *Davila*, 542 U.S. at 211. In other words, "when a state-law claim by its nature 'falls within the scope of' ERISA Section 1132(a)(1)(B)," it is completely preempted. *Gardner,* 715 F.3d at 613. Thus, although the Sixth Circuit's test for determining complete preemption under *Davila* speaks only of "the denial of benefits" (i.e., the more common fact pattern in ERISA preemption cases), complete preemption also applies when a claim generally "falls within the scope" of Section 1132(a)(1)(B), including when a plan participant seeks to enforce her rights under the Plan.

For example, in *Crawley-Mack v. Rite Aid of New York*, 2017 WL 11407303 at * 4-6 (E.D. N.Y. May 17, 2017), the plaintiff was a participant in an ERISA health insurance plan administered by Oxford Health. She brought her prescriptions to a Rite-Aid to be filled. Rite-Aid incorrectly entered the prescriptions into the database and gave her the wrong dosage, causing her to sustain injury. Plaintiff sued Oxford Health in state court, alleging that it breached its fiduciary duty to her by "failing to inform Rite Aid or the pharmacist that they were filling the prescription incorrectly." *Id.* Oxford Health removed the action to federal court on the basis of complete preemption. *Id.* The district court found that plaintiff's state law claim was completely preempted because her action was

23

to "enforce rights under the terms of the Plan" and "any fiduciary duty that the defendant owes to the plaintiff necessarily stems from the plan." *Id*. at * 4.

Here, Plaintiff does not dispute that the Cigna health care plan at issue is an ERISA-regulated plan or that she is a plan participant and/or beneficiary.  Moreover, she does not allege that there is any relationship between herself and Cigna aside from the ERISA healthcare plan at issue.  In the original Complaint, Plaintiff alleges that "CIGNA Healthcare offered [her] an insurance agreement through which CIGNA Healthcare agreed to provide certain health insurance coverage based upon their determination that she medically qualified." (Doc. No. 1-1 at ¶ 53.)  She alleges that, under this agreement, "CIGNA Healthcare was required to review [her] medical records . . . to determine medical necessity and whether to approve coverage for certain medical procedures."  (*Id*. at ¶ 56.)  Plaintiff further alleges that "CIGNA Healthcare reviewed [her] medical records and failed, refused, or neglected to properly apply its own guidelines to determine medical necessity of [her] bariatrical surgical procedure." (*Id*. at ¶ 60.)  She therefore claims that "CIGNA Healthcare breached the terms of the insurance policy by authorizing [her] medical provider to perform a surgical procedure for which she did not qualify."  (*Id*. at ¶ 62.)

Based on the above, the Court finds that Plaintiff's breach of contract claim is premised on the allegation that she had a right to expect that Cigna would review her medical records and "properly apply its own guidelines to determine medical necessity." (Doc. No. 1-1 at ¶ 60.)  Plaintiff claims that Cigna failed to do so, causing her injury and damages.  (*Id*. at ¶¶ 60, 62-64.)  As Cigna correctly notes, resolution of this claim will require the Court to interpret and evaluate the terms of the Plan (including Coverage Policy Number 0051) and determine whether Cigna properly administered benefits under that Plan.  At its core, Plaintiff's breach of contract claim implicates an eligibility

24

decision made by Cigna under the terms of an ERISA-regulated Plan. As such (and in the absence of any allegations of any other relationship between Plaintiff and Cigna aside from the Plan), Plaintiff's claim arises solely from ERISA because it seeks to enforce rights under an ERISA plan. *See, e.g., Davila*, 542 U.S. at 213 (finding complete preemption where "interpretation of the terms of the [plaintiffs'] benefit plans forms an essential part of their [state law] claim, and [] liability would exist here only because of [defendants'] administration of ERISA-regulated plans.")

Under the second prong of the *Davila* test, courts ask "whether the plaintiff alleges the violation of an independent legal duty." *Milby*, 844 F.3d at 611. A state claim is independent of ERISA when the duty conferred was "not derived from, or conditioned upon, the terms of" the plan and there is no "need[] to interpret the plan to determine whether that duty exists." *Gardne*r, 715 F.3d at 614. *See also Milby*, 844 F.3d at 611. Here, Plaintiff does not allege (or argue in her briefing) that there is any legal duty independent of ERISA or the plan terms. Moreover, as discussed above, the Court would necessarily need to interpret the Plan in order to resolve Plaintiff's breach of contract claim. *See Smith v. Commonwealth General Corp.,* 589 Fed. Appx. 738, 744 (6th Cir. 2014) ("Even if some of these claims could be characterized as independent state law claims, ERISA preempts claims where "deciding whether to grant benefits . . . was a necessary element of the state-law cause of action.")

Accordingly, and for all the reasons set forth above, the Court finds that Plaintiff's breach of contract claim, as set forth in the original Complaint, is completely preempted.[7] Therefore, the Court

---

[7] Plaintiff's reliance on *Smith v. Texas Children's Hospital,* 84 F.3d 152 (5th Cir. 1996) and *The Meadows v. Employers Health Insurance*, 826 F.Supp. 1225 (D. Az. 1993) is entirely misplaced. Neither of these cases are binding authority, and neither involve factual or legal circumstances that are similar to the instant action. In *Smith*, defendant Texas Children's Hospital persuaded plaintiff to leave her employment at another hospital and come to work at Texas Children's by promising more pay, a supervisory position, and the transfer of all of her employment benefits, including long term

had subject matter jurisdiction over the instant matter at the time of removal, and may proceed to consider Cigna's Motion to Dismiss Plaintiff's claims, as set forth in the First Amended Complaint.

With regard to Plaintiff's breach of contract claim in the First Amended Complaint, this claim is identical in all relevant respects to the breach of contract claim set forth in the original Complaint. Accordingly, the Court finds that Plaintiff's breach of contract claim in the First Amended Complaint is also completely pre-empted for all the reasons set forth above. Because Plaintiff's current breach of contract claim is completely pre-empted, it is not subject to dismissal. *See, e.g.*, *Lowe*, 821 Fed. Appx. at 494; *Southern Ohio Medical Center,* 2020 WL 1149814 at * 2; *Rizik,* 2014 WL 1048220 at * 3. In accordance with the prevailing practice in this Circuit, the Court will allow Plaintiff the opportunity to amend her First Amended Complaint to conform her breach of contract claim to ERISA.[8] *See Estate of Colbert*, 2013 WL 6048753 at * 4 ("When a Plaintiff's claim is completely

---

disability benefits under an ERISA plan. Plaintiff subsequently developed multiple sclerosis and was put on long-term disability. The insurance company administering the plan terminated plaintiff's benefits, after determining she did not qualify due to a pre-existing condition. The plaintiff then sued Texas Children's Hospital in state court, alleging (among other things) a state law claim for fraudulent inducement. This claim was premised on plaintiff's allegations that she lost a quantifiable stream of income (i.e. her long term benefit payments) because she relied upon Texas Children's misrepresentations that she would have the same benefits as she would have had had she remained with her previous employer. The Fifth Circuit held that Smith's fraudulent inducement claim was not preempted by ERISA because her claim "does not necessarily depend on the scope of Smith's rights under the Texas Children's ERISA plan." *Smith*, 84 F.3d at 155. *Smith* is entirely distinguishable from the instant case, both factually and legally. Indeed, Plaintiff does not explain how *Smith* bears any relevance to the instant case, particularly since (unlike the plaintiff's claim in *Smith*) Plaintiff's breach of contract claim herein is entirely dependent on the scope of her rights under the Cigna plan. Plaintiff's reliance on *The Meadows* is also misplaced. In that case, plaintiff, a health care provider, alleged that the defendant "wrongfully refused to pay the expenses of two of the Meadows' patients after representing that the patients were covered by an Employers Health Insurance Policy." *The Meadows*, 826 F. Supp. at 1226-27. The district court held that ERISA did not preempt The Meadows' state law claims for negligent misrepresentation, promissory estoppel and breach of contract because the hospital "sue[d] independently and not as an assignee of a beneficiary," "[did] not claim any benefits or rights under the ERISA plan," and "the alleged misrepresentations concern[ed] the existence and not the extent of coverage." *Id.* at 1234. By contrast, the Plaintiff here is suing in her capacity as a Plan participant, her claims pertain to her rights and benefits under the Plan, and the alleged wrongdoing on the part of Cigna concerns the extent of Plaintiff's coverage under the Plan. Thus, *The Meadows* is also clearly distinguishable.

[8] Cigna argues that Plaintiff should not be permitted to amend since she already amended her Complaint once, in response to Cigna's first Motion to Dismiss. The Court rejects this argument. At the time that Plaintiff first amended her complaint, she did not have the benefit of the Court's decision that her state law breach of contract claim was completely preempted.

preempted, he has the opportunity to amend his federal complaint to re-plead the claim to conform to ERISA"); *Erbaugh*, 126 F. Supp. 2d at 1082 (same); *Richie*, 2010 WL 785354 at *6 (same). Plaintiff shall file her Second Amended Complaint within fourteen (14) days of the date of this Order.

### 2. Complete Preemption—Remaining Claims

Cigna argues that Plaintiff's remaining claims (i.e., breach of fiduciary duty, equitable estoppel, and declaratory judgment) are also completely preempted because they fall within the scope of ERISA's civil enforcement scheme and satisfy the two-prong test set forth in *Davila*. (Doc. No. 23-1 at pp. 13-16.) Plaintiff argues generally that her claims are not completely preempted but does not address the *Davila* test or otherwise sufficiently articulate any particular reasons why these claims are not completely preempted.

In her breach of fiduciary duty claim against Cigna (Count III), Plaintiff asserts that Cigna "owed fiduciary duties to the participants to apply the language of the plan and the insurance documents as written." (Doc. No. 21 at ¶ 103.) She claims that Cigna breached its fiduciary duty when it "improperly approved [her] for the surgical procedure and incurred necessary medical expenses." (*Id*. at ¶ 104.) Plaintiff further asserts that Cigna "failed to assert any right to reimbursement of the improper expended medical expenses until June 2018." (*Id*. at ¶ 105.) Notably, Plaintiff alleges as follows:

> 106. To force Mrs. Zahuranec to repay medical expenses which were paid, and should never have been approved, which caused her debilitating and near life-ending injuries, **would be contrary to ERISA**, **the insurance documents, federal common law, and equity.**
>
> 107. CIGNA and Caesars Entertainment Operating Company, Inc.'s breach of their fiduciary duties precludes Mrs. Zahuranec from having to repay any of the improperly expended medical expenses.

(*Id*. at ¶¶ 106, 107) (emphasis added).

27

As an initial matter, it appears from the face of the pleading that Plaintiff has, in fact, brought her breach of fiduciary claim under ERISA, rather than under state law.  In the context of arguing this claim is completely preempted, Cigna suggests, summarily, that Plaintiff cannot assert a claim for breach of fiduciary duty under Section 502(a)(3) because that section only offers "appropriate equitable relief."  Cigna argues that "Plaintiff here is not seeking any equitable relief based on its Cigna's purported breach of its fiduciary duty" and is, instead, seeking only punitive damages.  (Doc. No. 26 at p. 10.)  However, in Count III, Plaintiff states that she is seeking an Order precluding her from having to repay any of the improperly expended medical expenses relating to her bariatric surgery.  (Doc. No. 21 at ¶ 107.)  Cigna does not acknowledge this requested relief or address whether it constitutes "appropriate equitable relief" under ERISA.

Based on the above, the Court finds that Plaintiff's breach of fiduciary claim does not state a claim under state law and, as such, the doctrine of complete preemption is not applicable.  Cigna's Motion to Dismiss this claim is without merit and denied.[9]

In Count IV, Plaintiff asserts a claim against Cigna for equitable estoppel.  In this claim, Plaintiff asserts that (1) Cigna "made promises to [her] that she met medical necessities for a surgical procedure," and (2) she relied on Cigna's representations "and suffered severe and drastic injuries as a direct result of her reliance."  (Doc. No. 21 at ¶¶ 109-110.)  Plaintiff alleges that Cigna "should be equitably estopped from seeking enforcement to have [her] reimburse for medical expenses they incurred which should never have been incurred."  (*Id.* at ¶ 111.)  Similarly, in Count V, Plaintiff seeks a declaratory judgment that she "is not required to reimburse CIGNA and Caesars

---

[9] Cigna does not argue that Plaintiff's breach of fiduciary duty claim fails to state a claim for relief under ERISA, pursuant to Fed. R. Civ. P. 12(b)(6).  Thus, the Court does not address this issue.

Entertainment Operating Company, Inc., for any medical expenses they unilaterally and improperly agreed to assume responsibility to pay."  (*Id.* at ¶ 116.)

The Court finds that Plaintiff's equitable estoppel and declaratory judgment claims are completely preempted.  Both claims arise solely from ERISA because they seek to enforce rights under an ERISA plan, and the Court's interpretation of the provisions of that Plan form an essential part of Plaintiff's claims.  *See, e.g., Davila*, 542 U.S. at 213 (finding complete preemption where "interpretation of the terms of the [plaintiffs'] benefit plans forms an essential part of their [state law] claim, and [] liability would exist here only because of [defendants'] administration of ERISA-regulated plans.")  In addition, as discussed *supra*, Plaintiff does not identify any legal duty independent of ERISA or the plan terms.  *Id*.

Because Plaintiff's equitable estoppel and declaratory judgment claims are completely pre-empted, they are not subject to dismissal.  *See, e.g., Lowe*, 821 Fed. Appx. at 494; *Southern Ohio Medical Center*, 2020 WL 1149814 at * 2; *Rizik*, 2014 WL 1048220 at * 3.  In accordance with the prevailing practice in this Circuit, the Court will allow Plaintiff the opportunity to amend her First Amended Complaint to conform these claims to ERISA.  *See Estate of Colbert*, 2013 WL 6048753 at * 4 ("When a Plaintiff's claim is completely preempted, he has the opportunity to amend his federal complaint to re-plead the claim to conform to ERISA"); *Erbaugh*, 126 F. Supp. 2d at 1082 (same); *Richie*, 2010 WL 785354 at *6 (same).  Plaintiff shall file her Second Amended Complaint within fourteen (14) days of the date of this Order.[10]

---

[10] In her Brief in Opposition, Plaintiff requests, summarily, that "this Court withhold ruling upon the present Motion to Dismiss to allow the parties to engage in discovery to determine whether the allegations contained in Plaintiff's Complaint are subject to the pre-emption of ERISA." (Doc. No. 25 at p. 13.)  Plaintiff's request is denied.  The issue of whether Plaintiff's claims are pre-empted is a legal issue.  Plaintiff provides no explanation as to why discovery would be useful or necessary in resolving this issue, nor does she cite any authority in support of her request.

In light of the above, the Court need not address Cigna's argument that Plaintiff's claims are subject to dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state claims under Ohio law.

## V.      Conclusion

Accordingly, and for all the reasons set forth above, Defendant's Motion to Dismiss (Doc. No. 23) is DENIED.  As directed above, Plaintiff shall file her Second Amended Complaint within fourteen (14) days of the date of this Order.[11]

**IT IS SO ORDERED.**


         _s/Pamela A. Barker_____

         PAMELA A. BARKER

Date:  December 14, 2020        U. S. DISTRICT JUDGE

---

[11] The Court notes that Plaintiff has yet to perfect service on Defendants Caesars, Davda, and/or Breon.  Plaintiff is advised that, if evidence of service as to these Defendants is not filed within 90 days of the filing of the Second Amended Complaint, the Court may *sua sponte* dismiss these Defendants for lack of service.