# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

Lisa Zahuranec,                              Case No. 1:19cv2781

                    **Plaintiff,**

      **-vs-**

                              **JUDGE PAMELA A. BARKER**

CIGNA Healthcare, Inc., et al.,

              **Defendants**      **MEMORANDUM OPINION & ORDER**

Currently pending are the Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendants Connecticut General Life Insurance Company, Jessica Breon, and Rajesh Davda. (Doc. Nos. 33, 41, 43.) Plaintiff Lisa Zahuranec filed Briefs in Opposition, to which Defendants responded. (Doc. Nos. 38, 39, 44, 46, 48.) For the following reasons, Defendants' Motions are GRANTED.

## I.    Background

### A.    Factual Allegations

In March 2012, Plaintiff Lisa Zahuranec was hired as an employee of The Horseshoe Casino Company, Inc. (hereinafter "The Horseshoe Casino"). (Doc. No. 29 at ¶ 8.) The Horseshoe Casino is affiliated with Defendant Caesars Entertainment Operating Company, Inc. (hereinafter "Caesars"), which offered a Welfare Benefit Plan (hereinafter "the Plan") to Plaintiff. (*Id.* at ¶¶ 9, 10.) Plaintiff alleges that Caesars is the Plan Administrator for this Plan, and that Defendant Connecticut General Life Insurance Company (hereinafter "Cigna") is a Claims Administrator. (*Id.* at ¶¶ 10, 12.)

One of the plans offered by The Horseshoe Casino was a health insurance plan offered by Cigna. (*Id.* at ¶ 11.) Plaintiff alleges that she accepted the health insurance plan offered by Cigna and that her Policy had an effective date of June 17, 2012. (*Id.* at ¶¶ 16, 19.) Plaintiff further alleges

that this health insurance plan is a "valid enforceable contract between the parties" that has "various coverage policies which dictate the rights and obligations of CIGNA Healthcare and Mrs. Zahuranec regarding certain medical services and/or procedures." (*Id.* at ¶¶ 21, 22.) One of these policies is Coverage Policy Number 0051 for Bariatric Surgery.[1] (*Id.* at ¶ 23.)

In relevant part, Coverage Policy Number 0051 provides that "Cigna covers bariatric surgery using a covered procedure outlined below as medically necessary when ALL of the following criteria are met:"

• Body mass index (BMI) of 40 or greater or a BMI of 35-39.9 with at least one clinically significant obesity-related ailment (co-morbidity) such as degenerative joint disease in a weight-bearing joint, Type 2 diabetes, poorly controlled hypertension, severe obstructive sleep apnea, or pulmonary hypertension.

• Failure of a medical management including evidence of active participation within the last 12 months in one physician-supervised or registered dietician supervised weight-management program for a minimum of 3 consecutive months (89+ days) with monthly documentation of all of the following:

    o Weight;
    o Current dietary program;
    o Physical activity (e.g. exercise program)

• A thorough multidisciplinary evaluation within the previous 6 months that includes all of the following:

    o An evaluation by a bariatric surgeon recommending surgical treatment, including a description of the proposed procedure(s) and all of the associated current CPT codes;

    o A separate medical evaluation from a physician other than the surgeon recommending surgery, that includes both a recommendation for bariatric surgery as well as a medical clearance for bariatric surgery;

    o Unequivocal clearance for bariatric surgery by a mental health provider;

---

[1] Plaintiff quotes certain provisions of Coverage Policy 0051 in the Second Amended Complaint and also attaches a copy of the entire Policy as an Exhibit. (Doc. No. 29-1).

o Nutritional evaluation by a physician or registered dietician.

(*Id.* at ¶ 27.) *See also* Doc. No. 29-1 at PageID#s 866-867.

On January 23, 2013, Plaintiff visited a medical provider to seek intervention for weight loss through bariatric surgery. (Doc. No. 29 at ¶ 24.) At that time, she weighed 196 pounds and had a Body Mass Index ("BMI") under 40.0. (*Id.* at ¶ 25.) On February 14, 2013, after conducting testing, and examinations and "other evaluations to determine any possible co-morbidities," Plaintiff's medical provider submitted a request to Cigna for pre-authorization for bariatric surgery. (*Id.* at ¶¶ 26, 29.) Cigna, through its employee Defendant Jessica Breon, R.N. ("Nurse Breon"), declined to provide coverage because Plaintiff had not yet been employed by The Horseshoe Casino for one year, as required by her health insurance policy. (*Id.* at ¶¶ 28, 30.)

On August 1, 2013, Plaintiff's medical providers submitted supplemental documentation to Cigna in an attempt to obtain pre-authorization for the bariatric surgery. (*Id.* at ¶ 35.) Defendants Rajesh Davda, M.D. ("Dr. Davda") and Nurse Breon were assigned to review Plaintiff's file. (*Id.* at ¶ 33.) Coverage was again declined, this time on the basis that Plaintiff had failed to submit documentation demonstrating a failure of medical management; i.e., evidence of active participation within the last 12 months in a supervised weight management program for a minimum of three consecutive months. (*Id.* at ¶ 36.)

On October 25, 2013, Plaintiff's medical provider again supplemented the previously provided documents to seek pre-authorization. (*Id.* at ¶ 39.) Plaintiff alleges that, among other things, "[t]he medical records and evidence produced to CIGNA Healthcare . . . included: (1) a registered dietician visit of February 1, 2013; (2) [a] registered dietician visit of March 15, 2013, and (3) a registered dietician visit of October 22, 2013." (*Id.* at ¶ 40.) Plaintiff alleges that this medical

evidence "did not strictly fulfill the requirements of" Coverage Policy Number 0051 because it did not demonstrate "a minimum of 3 consecutive months (89+ days)" of participation in a supervised weight management program, "as February, March, and October [2013] are nowhere near consecutive." (*Id.* at ¶ 41.) In addition, Plaintiff claims that she did not fulfill Coverage Policy Number 0051's requirement that she have a clinically significant obesity-related ailment. (*Id.* at ¶¶ 48, 49.) Lastly, Plaintiff alleges that she failed to meet the requirements of this Policy because (1) she did not have a thorough multidisciplinary evaluation within the previous 6 months; and (2) her mental health provider had determined she was experiencing depression, "which is generally regarded as a condition which precludes approval of such a bariatric procedure." (*Id.* at ¶¶ 51- 54.)

In light of the above, Plaintiff alleges that she should not have been pre-authorized for bariatric surgery. (*Id.* at ¶¶ 43, 46, 49.) Instead, Plaintiff alleges that "she should have been referred to a registered dietician for a thorough attempt [at] non-surgical weight management." (*Id.* at ¶ 56.) However, on November 5, 2013, Cigna (through Dr. Davda and Nurse Breon) nonetheless approved Plaintiff for bariatric surgery. (*Id.* at ¶¶ 43, 50.) Had Cigna not authorized the surgery, Plaintiff alleges that she would "never have been able to pay for the procedure and therefore would never have undergone" it. (*Id.* at ¶ 45.)

Plaintiff underwent bariatric surgery (i.e., a "laparoscopic sleeve gastrectomy") on December 17, 2013. (*Id.* at ¶ 57.) Unfortunately, she suffered "severe complications" as a result of this procedure. (*Id.* at ¶ 58.) Plaintiff alleges that "[a]s a direct and proximate result of CIGNA Healthcare and Caesars [] breaching the terms of the health insurance policy and specifically breaching the terms of the coverage policy number 0051, Mrs. Zahuranec suffered injuries, damages, loss of ability to

work, lost past and future wages, incurred extensive medical expenses, loss of enjoyment of life, inability to carry on activities of daily living, and a greatly diminished life expectancy." (*Id.* at ¶ 60.)

Subsequently, in August 2017, Plaintiff filed a medical malpractice action in the Cuyahoga County Court of Common Pleas against the Cleveland Clinic Foundation and the physicians who performed her bariatric surgery. *See Lisa Zahuranec, et al. v. Tomacz Rogula, et al.,* Cuyahoga County Court of Common Pleas Case No. CV-17-885085. According to the state court docket, the parties in that action settled and Plaintiff filed a Notice of Dismissal with prejudice on June 20, 2019. (*Id.*)

Meanwhile, in June 2018, Cigna (through third-party administrator Conduent) asserted a claim for reimbursement of the medical expenses paid on behalf of Plaintiff with respect to her surgery. (Doc. No. 29 at ¶ 64.) Cigna asserts that this reimbursement claim is predicated on certain subrogation and lien provisions set forth in the Plan. In particular, Cigna directs the Court's attention to the section of the Plan titled "Subrogation/Right of Reimbursement," which provides that:

> If a Participant incurs a Covered Expense for which, in the opinion of the plan or its claim administrator, another party may be responsible or for which the Participant may receive payment as described above:
>
> 1. Subrogation: The plan shall, to the extent permitted by law, be subrogated to all rights, claims or interests that a Participant may have against such party and shall automatically have a lien upon the proceeds of any recovery by a Participant from such party to the extent of any benefits paid under the plan. A Participant or his/her representative shall execute such documents as may be required to secure the plan's subrogation rights.
>
> 2. Right of Reimbursement: The plan is also granted a right of reimbursement from the proceeds of any recovery whether by settlement, judgment, or otherwise. This right of reimbursement is cumulative with and not exclusive of the subrogation right granted in paragraph 1, but only to the extent of the benefits provided by the plan.

(Doc. No. 11-3 at PageID# 393.) The Plan further provides that:

By accepting benefits under this plan, a Participant:

- grants a lien and assigns to the plan an amount equal to the benefits paid under the plan against any recovery made by or on behalf of the Participant which is binding on any attorney or other party who represents the Participant whether or not an agent of the Participant or of any insurance company or other financially responsible party against whom a Participant may have a claim provided said attorney, insurance carrier or other party has been notified by the plan or its agents;

- agrees that this lien shall constitute a charge against the proceeds of any recovery and the plan shall be entitled to assert a security interest thereon; [and]

- agrees to hold the proceeds of any recovery in trust for the benefit of the plan to the extent of any payment made by the plan.

(*Id*. at PageID# 394.)

Plaintiff claims that she should not be forced "to re-pay monies expended by CIGNA which should never have been incurred by their violations of the Plan, ERISA, the health insurance guidelines, and their fiduciary duties." (Doc. No. 29 at ¶ 66.)

## B.  Procedural history

In her Second Amended Complaint,[2] Plaintiff alleges claims against Cigna under ERISA § 502(a)(1)(B) to enforce her rights under the Plan, and under § 502(a)(3) for breach of fiduciary duty, equitable estoppel, and a declaration that she need not reimburse or repay Cigna for medical expenses

---

[2] Plaintiff initially filed a Complaint against Cigna in the Cuyahoga County Court of Common Pleas, in which she asserted a claim for breach of contract arising out of Cigna's decision to approve her for bariatric surgery. (Doc. No. 1-1.) Cigna removed the action to this Court on November 26, 2019 on the basis that complete preemption under ERISA provided federal question jurisdiction under 28 U.S.C. § 1331. (Doc. No. 1.) Plaintiff thereafter filed a First Amended Complaint on April 8, 2020, in which she added Caesars, Dr. Davda, and Nurse Breon as defendants. (Doc. No. 21.) Cigna filed a Motion to Dismiss, in which it argued that Plaintiff's state law claims should be dismissed as a matter of law because they are both expressly and completely preempted pursuant to ERISA §§ 514(a) and 502(a)(1)(B). (Doc. No. 23-1 at pp. 2, 10-16.) Plaintiff opposed the Motion. (Doc. No. 25.) On December 14, 2020, the Court denied Cigna's Motion to Dismiss on the grounds that Plaintiff's claims were completely preempted by ERISA and, therefore, not subject to dismissal. (Doc. No. 27.) The Court allowed Plaintiff the opportunity to amend her First Amended Complaint to conform her claims to ERISA. (*Id*. at p. 29.) Plaintiff thereafter filed her Second Amended Complaint on January 4, 2021. (Doc. No. 29.)

"which were improperly paid." (Doc. No. 29 at Counts I, III, IV, and V). Plaintiff also asserts claims against Dr. Davda and Nurse Breon for "breach of their duties and job responsibilities" and an enforcement of Plaintiff's "rights under the plan pursuant to [ERISA §502(a)] and a determination that she should not have to repay medical expenses which should not have been incurred." (*Id*. at Count II). In addition to declaratory relief, Plaintiff seeks compensatory damages in a sum in excess of $25,000, punitive damages based upon the breach of fiduciary duties, attorneys' fees, penalties as permitted pursuant to 29 U.S.C. §1132(i)(l)(m), interest and costs. (*Id*. at "Wherefore" clause).[3]

Cigna filed a Motion to Dismiss on February 8, 2021, which Plaintiff opposed. (Doc. Nos. 33, 38.) Thereafter, Breon and Davda filed separate Motions to Dismiss on April 7, 2021 and May 10, 2021, respectively. (Doc. Nos. 41, 43.) Plaintiff opposed both Motions. (Doc. Nos. 44, 48.)

## II.    Standard of Review

Under Fed. R. Civ. P. 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the Complaint in the light most favorable to the plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007)).

The measure of a Rule 12(b)(6) challenge — whether the Complaint raises a right to relief above the speculative level — "does not 'require heightened fact pleading of specifics, but only

---

[3] The Second Amended Complaint also sets forth several claims against Defendant Caesars. On April 6, 2021, however, Caesars was dismissed without prejudice due to Plaintiff's failure to timely perfect service. (Doc. No. 40.)

enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir.2008) (quoting in part *Twombly*, 550 U.S. at 555–556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera*, 551 F.3d at 466 (quoting in part *Erickson v. Pardus*, 551 U.S. 89 (2007)) (quoting *Twombly,* 127 S.Ct. at 1964). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 679.

## III. Analysis

### A. Materials Considered in Addressing Pending Motions to Dismiss

As a preliminary matter, the Court determines the materials that it may consider in resolving the pending Motions to Dismiss. Defendants argue that this Court may consider Plan documents because they are referred to in the Second Amended Complaint and are central to Plaintiff's claims. (Doc. Nos. 33, 41, 43.) Defendants also assert that the Court may consider Plaintiff's Complaint and

Notice of Dismissal in her medical malpractice action on the grounds that they are public records. (*Id.*)  Plaintiff argues that the Court should only consider Coverage Policy Number 0051, but not the "entire contents" of the Plan.  (Doc. No. 48 at p. 9.)  In addition, Plaintiff asserts that this Court should consider the transcript of a deposition taken of Nurse Breon in Plaintiff's state court medical malpractice action, as well as the exhibits to that deposition.[4]  (Doc. No. 44 at fn 1.)

In ruling on a Rule 12(b)(6) motion, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430.  *See also Brent v. Wayne County Dep't of Human Services*, 901 F.3d 656, 694 (6th Cir. 2018) (same); *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).  When a court takes judicial notice of matters outside the pleadings, it may only consider the existence of these documents but not the truth of the specific factual allegations contained therein, as such factual allegations are subject to reasonable dispute.  *See In re Omnicare, Inc. Securities Litigation*, 769 F.3d 455, 467 (6th Cir. 2014); *United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012).

Here, the Court finds that it may consider Coverage Policy 0051, the 2012 - 2013 Summary Description of the Plan, and the Notice of Lien because they are referred to in the Second Amended Complaint and are central to Plaintiff's claims.[5]  *See, e.g., Lowe v. Lincoln National Life Ins. Co.*,

---

[4] Plaintiff attaches Nurse Breon's deposition transcript and exhibits as an Exhibit to her Brief in Opposition to Nurse Breon's Motion to Dismiss.  (Doc. No. 44-1.) The Court notes that several of the Exhibits consist of Plaintiff's unredacted medical records, which contain sensitive personal information.  To ensure Plaintiff's privacy, the Court will *sua sponte* seal Nurse Breon's deposition transcript and exhibits.

[5] The Court rejects Plaintiff's argument that it should only consider Coverage Policy 0051 and not the Summary Description of the Plan ("SDP").  The subrogation, reimbursement, and lien provisions at issue are all set forth in the

821 Fed. Appx. 489, fn 1 (6th Cir. 2020) ("Accordingly, we consider the disability insurance policy and the various letters that Lincoln sent to Lowe, which are referred to in the complaint, are central to Lowe's claims, and are appended to Lincoln's motion to dismiss.")  In addition, this Court will take judicial notice of the existence of Plaintiff's Complaint and Notice of Dismissal in her state court medical malpractice action, as they were filed in her state court case and are, therefore, public records. The Court will not, however, consider the statements contained in those documents for the truth of the matters asserted therein.

Lastly, the Court will not consider Nurse Breon's deposition transcript and related exhibits. Plaintiff does not attach Nurse Breon's deposition transcript and/or exhibits to the Second Amended Complaint, or expressly refer to those materials in that pleading.  Further, the state court docket sheet does not indicate that either Nurse Breon's deposition transcript or exhibits were filed in that case and, therefore, they do not appear to be public records.  *See Zahuranec, et al. v.  Rogula, et al.,* Cuyahoga County Court of Common Pleas Case No. CV-17-885085.  Moreover, even if the deposition transcript and exhibits at issue were public records, the Court could only "consider the existence of these documents but not the truth of the specific factual allegations contained therein." *See In re Omnicare, Inc. Securities Litigation*, 769 F.3d at 467; *Ferguson*, 681 F.3d at 834.  Plaintiff, however, cites to Nurse Breon's deposition and exhibits for the improper purpose of demonstrating the truth of the matters asserted therein, i.e., that her "testimony established that she did not properly apply the guidelines of Cigna and approved a procedure which was not medically necessary under the guidelines and therefore should never have been paid." (Doc. No. 44 at fn 1.)  Accordingly, the

---

SDP.  The applicability of these provisions are referenced in the Second Amended Complaint and central to Plaintiff's claims.

Court will not consider either Nurse Breon's deposition transcript or the exhibits attached thereto, in addressing the pending Motions to Dismiss.

## B.     Defendant Cigna's Motion to Dismiss

As noted above, Plaintiff alleges claims against Cigna under both ERISA § 502(a)(1)(B) and § 502(a)(3).  The Court will address Plaintiff's claims under these Sections separately, below.

### 1.     ERISA § 502(a)(1)(B) claims

ERISA § 502(a)(1)(B) allows a "participant" or "beneficiary" to bring a civil action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).   In Count I, Plaintiff seeks to enforce and/or clarify her rights under the Plan pursuant to this Section.  (Doc. 29 at ¶¶ 94, 95.)  Specifically, Plaintiff alleges that Cigna "reviewed [her] medical records and failed, refused, or neglected to properly apply its own guidelines to determine medical necessity of the bariatric surgical procedure" that she underwent in December 2013.  (*Id.* at ¶ 87.)  Plaintiff claims that Cigna 'breached the terms of the insurance policy by authorizing [her] medical provider to perform a surgical procedure for which she did not qualify" under the Plan.  (*Id.* at ¶ 89.)  She alleges that Cigna's breach of the policy caused her to undergo a procedure that was "not necessary" and which ultimately caused her to suffer "catastrophic injuries."  (*Id.* at ¶¶ 90, 91.) Plaintiff asks the Court to declare that "she does not have to repay any alleged medical expenses paid by Cigna." (*Id.* at ¶¶ 96, 99.)

Cigna asserts that Plaintiff cannot assert a claim under § 502(a)(1)(B) to enforce her rights under the Plan because she fails to sufficiently allege what rights she seeks to enforce.  (Doc. No. 33-

1 at p. 13.)  Cigna further argues that, as a matter of law, Plaintiff is not entitled to either equitable relief or compensatory damages under ERISA § 502(a)(1)(B).  (*Id*.)

Plaintiff argues that she has sufficiently alleged a claim under § 502(a)(1)(B) to enforce her alleged right under the Plan to not be required to reimburse Cigna for medical expenses that were improperly approved.  (Doc. No. 38 at p. 8.)  Plaintiff explains her argument as follows.  She maintains that, by its express terms, the Plan does not cover "expenses for supplies, care, treatment or surgeries [that are] not Medically Necessary."  (Doc. No. 11-3 at PageID# 319.)  Plaintiff argues that she has sufficiently alleged that her bariatric surgery was not medically necessary because she did not strictly fulfill all of the requirements set forth in Coverage Policy 0051.  (Doc. No. 38 at p. 9-10.)  She maintains that, because her bariatric surgery is not "medically necessary," it cannot constitute a "benefit" under the Plan.  (*Id*. at p. 10.)  Since her bariatric surgery is not a "benefit," Plaintiff asserts that Cigna does not have a right to subrogation or reimbursement for any monies paid relating to that surgery.  (*Id*.)  Thus, Plaintiff argues that she has stated a claim because she is "seeking to enforce the terms of the [Plan] language to determine that Defendant is not able to unilaterally decide to approv[e] a procedure and unilaterally agree to incur medical expenses which were not medically necessary."  (*Id*. at p. 9.)

In response, Cigna maintains that the Plan does not define the term "benefit" and, therefore, that term "is meant to be understood in the ordinary sense of the word and in accordance with ERISA § 502(a)(1)(B) – i.e., the amount of money Plaintiff received under the Plan for her bariatric surgery." (Doc. No. 39 at p. 4.)  Because it is undisputed that the Plan covered the costs of Plaintiff's bariatric surgery and related care, Cigna argues that Plaintiff accepted Plan "benefits" for her bariatric surgery and thereby agreed to the subrogation and lien provisions of the Plan.  (*Id*.)  In this regard, Cigna

maintains that there is nothing in the Plan that limits the Plan's subrogation rights to "medically necessary procedures which were properly approved," as argued by Plaintiff. (*Id*. at p. 5.) Finally, Cigna notes that "because the Plan is self-funded, the right to 'subrogation or claim reimbursement' belongs to the Plan and not to Cigna." (*Id.* at p. 6.)

For the following reasons, the Court finds that Plaintiff has failed to state a claim under ERISA § 502(a)(1)(B). The premise of Plaintiff's argument is that she did not receive any "benefits" under the Plan relating to her bariatric surgery because she did not "strictly comply" with all of the requirements of Coverage Policy Number 0051 and, therefore, the surgery was not "medically necessary." Plaintiff does not direct this Court's attention to any language in the Plan that defines the term "benefit" as being limited to expenses relating to "medically necessary" care, treatment, or procedures. Nor does she cite any legal authority supporting her position that this Court should construe the term "benefit" in such a narrow fashion.

As Cigna correctly notes, the term "benefit" is not defined in the Plan.[6] When the terms of an ERISA plan are undefined, federal rules of contract interpretation apply and plan provisions are interpreted "'according to their plain meaning in an ordinary and popular sense.'" *Adams v. Anheuser-Busch Companies, Inc*., 758 F.3d 743, 748 (6th Cir. 2014) (quoting *Williams v. Intl. Paper Co*., 227 F.3d 706, 711 (6th Cir. 2000)). *See also Perez v. Aetna Life Ins. Co*., 150 F.3d 550, 556 (6th Cir. 1998) (finding that federal common law rules of contract interpretation apply in construing an ERISA plan, and a plan's provisions must be interpreted "according to their plain meaning, in an ordinary and popular sense.") Courts often turn to dictionary definitions in determining the plain and

---

[6] The "Important Definitions" section of the Plan does not include a definition of the term "benefit." (Doc. No. 11-3 at PageID# 411.) In addition, neither party argues that ERISA defines the term "benefit." The Court notes that the "Definitions" section of ERISA does not contain a definition of the term "benefit." *See* 29 U.S.C. § 1002.

ordinary meaning of ERISA plan terms. *See, e.g.*, *Kovach v. Zurich American Ins. Co.*, 587 F.3d 323, 333 (6th Cir. 2009) (in ERISA case, applying the dictionary definition of "accidental" to determine its ordinary meaning); *Sosinski v. Unum Life Ins. Co. of America*, 15 F.Supp.3d 723, 730 (E.D. Mich. 2014) (in ERISA case, noting that "[d]ictionaries of the English language are a fundamental tool in ascertaining ... plain meaning.") (citing *United States v. Lachman*, 387 F.3d 42, 51 (1st Cir. 2004)).

Applying these principles to the instant case, the Court notes that the term "benefit" is defined in the Merriam Webster Dictionary as "a payment or service provided for under an annuity, pension plan, or insurance policy." *See* https://www.merriam-webster.com/dictionary/benefit. Black's Law Dictionary defines "benefit" as "[f]inancial assistance that is received from an employer, insurance or a public program in time of sickness, disability, or unemployment." *See* Black's Law Dictionary (10th ed. 2009). Both dictionaries, then, define the term "benefit" broadly in terms of monetary payment or assistance under an insurance policy or plan. Neither definition limits the meaning of the term "benefit" to payments for expenses that have been properly determined to be "necessary" and/or "medically necessary" under policy or plan requirements.

The Court finds that, in the context of the ERISA plan at issue, the plain and ordinary meaning of the term "benefit" is the payment of money to, or on behalf of, the Plaintiff under the Plan. There is no support, either in the language of the Plan itself or under general contract principles, for Plaintiff's argument that the term "benefit" only applies to payment for "medically necessary" procedures that "strictly comply" with the Plan preauthorization requirements. The Plan itself does not define the term "benefit" in this fashion and dictionary definitions of this term are not limited to include only "necessary" or "covered" expenses. Moreover, there is nothing in either the subrogation

14

and/or lien provisions of the Plan that limit the Plan's rights to recovery to "medically necessary" expenses.

Rather, as noted above, the Plan's Subrogation provision expressly states that "the plan shall . . . be subrogated to all rights, claims or interests that a Participant may have against such party and shall automatically have a lien upon the proceeds of any recovery by a Participant from such party **to the extent of *any* benefits paid under the plan.**" (Doc. No. 11-3 at PageID# 393) (emphasis added). On its face, this provision does not limit the Plan's subrogation rights to the subset of benefits paid for expenses that are "medically necessary" and/or in compliance with Plan preauthorization requirements. To the contrary, the provision broadly states that the Plan's subrogation rights extend "to the extent of *any* benefits paid under the plan," which is inconsistent with Plaintiff's narrow construction of this provision to include only "medically necessary" expenses. Indeed, Plaintiff's construction would essentially require the Court to add terms to the Plan limiting the meaning of the term "benefits" and/or the subrogation provision, which courts have found is not appropriate in the ERISA context. *See Perez*, 150 F.3d at 557 (in ERISA case, finding that courts are not permitted to rewrite contracts by adding additional terms).

Here, it is undisputed that (1) Plaintiff requested that the Plan cover the costs of her bariatric surgery; (2) the Plan agreed to cover those costs; (3) Plaintiff underwent the surgery in December 2013; and (4) the Plan did, in fact, cover the costs of her bariatric surgery and related care. Applying the plain and ordinary meaning of the term "benefit," the Court finds that Plaintiff did, in fact, receive "benefits" within the meaning of the Plan when she requested and accepted payment by the Plan for her bariatric surgery and related care. Because the subrogation and lien provisions apply to "any benefits paid under the Plan," the Court finds that Plaintiff cannot state a claim under ERISA §

502(a)(1)(B) to enforce her alleged right to "not have to repay any alleged medical expenses paid by Cigna" on the grounds that the benefits were paid for a surgery that was allegedly not medically necessary.

Accordingly, and for all the reasons set forth above, the Court finds that Plaintiff's claims under ERISA § 502(a)(1)(B) are subject to dismissal for failure to state a claim upon which relief may be granted.[7]

### 2.    ERISA § 502(a)(3) claims

ERISA § 502(a)(3) provides that "[a] civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).  In Counts III, IV, and V of the Second Amended Complaint, Plaintiff asserts claims against Cigna under §502(a)(3) for breach of fiduciary duty, equitable estoppel and declaratory relief. (Doc. No. 29.)  In each of these claims, Plaintiff asks the Court to find that, under the terms of the Plan, she is not required to reimburse Cigna for any medical expenses relating to her bariatric surgery and related care.  (Doc. No. 29 at ¶¶ 116, 117, 121, 122, 126, 128.)

---

[7] In her Brief in Opposition, Plaintiff appears to argue that ERISA does not apply, asserting that "by seeking reimbursement of medical expenses which were improperly paid, [Defendants] are exceeding the types of claims which are preempted by ERISA." (Doc. No. 38 at p. 11-12.)  This argument is without merit for numerous reasons.  First, the claims set forth in Plaintiff's Second Amended Complaint are expressly plead under ERISA §§ 502(a)(1)(B) and 502(a)(3).  Thus, it makes no sense for Plaintiff to argue preemption, i.e., to argue that her ERISA claims are not preempted by ERISA.  Further, to the extent Plaintiff is arguing that the ERISA claims set forth in her Second Amended Complaint are actually state law claims which are not preempted by ERISA, this argument is rejected.  Plaintiff cannot unilaterally amend her complaint in a brief in opposition to attempt to recast her ERISA claims as unidentified state law claims.  Moreover, in a previous Memorandum Opinion & Order, this Court already determined that the state law claims that Plaintiff asserted in her First Amended Complaint were, in fact, preempted by ERISA.  (Doc. No. 27.)  To the extent Plaintiff is seeking reconsideration of that Order via her Brief in Opposition, any such argument is procedurally improper, without merit, and rejected.

For the following reasons, the Court find that Plaintiff has failed to state a claim under § 502(a)(3) for either breach of fiduciary duty, equitable estoppel, or declaratory judgment.

### a.    Breach of Fiduciary Duty

The Sixth Circuit has recognized an equitable claim by a participant against an ERISA plan fiduciary arising out of § 502(a)(3) when a fiduciary misleads a participant or beneficiary. *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 432 (6th Cir.2006) (citing *Krohn v. Huron Mem. Hospital*, 173 F.3d 542, 546 (6th Cir.1999)).   To establish a claim for breach of fiduciary duty based on a purported misrepresentation, a plaintiff must show: (1) that the defendant was acting in a fiduciary capacity when it made the challenged representations; (2) that these representations constituted material misrepresentations; and (3) that the plaintiff relied on those misrepresentations to her detriment. *Moore*, 458 F.3d at 433.   *See also Briggs v. National Union Fire Ins. Co. of Pittsburgh, PA,* 774 Fed. Appx. 942, 947 (6th Cir. 2019).   A fiduciary breaches his duty by providing plan participants with materially misleading information regardless of whether the fiduciary's statements or omissions were made negligently or intentionally. *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002).   "A misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision about benefits."  *Id*. (quoting *Krohn*, 173 F.3d at 547).   *See also Moore*, 458 F.3d at 433.   "The employee's reliance on misrepresentations also must have been reasonable."  *Van Loo v. Cajun Operating Co,* 703 Fed. Appx. 388, 394 (6th Cir. 2017) (citing *Moore*, 458 F.3d at 433).

Here, the first element is not at issue because it is undisputed that Cigna was acting in a fiduciary capacity when it approved Plaintiff's bariatric surgery.   With regard to the second element, Plaintiff argues that Cigna's representation that she "medically qualified for the surgical procedure

17

pursuant to their Coverage Policy Number 51" constitutes a material misrepresentation. (Doc. No. 38 at p. 4.) Essentially, Plaintiff asserts Cigna should have protected her from herself, i.e., that Cigna had a duty to determine (and to advise Plaintiff) that she did not qualify under Coverage Policy Number 0051 because that would have prevented her from undergoing the surgery.

The Court disagrees. As Cigna correctly notes, Coverage Policy Number 0051 specifically states that "Coverage Policies are not recommendations for treatment and should never be used as treatment guidelines." (Doc. No. 29-1 at PageID# 866.) Thus, while Cigna did grant Plaintiff's request for coverage of the costs of the surgery, it did not make any representation (much less a misrepresentation) to Plaintiff regarding whether or not she should undergo that surgery. Moreover, it is undisputed that Cigna did not make a material misrepresentation to Plaintiff regarding the provision of future benefits for her surgery. *See, e.g., James,* 305 F.3d at 455 (stating that "a breach of fiduciary duty occurs when the . . . plan administrator on its own initiative provides misleading information *about the future benefits* of a plan.") (emphasis added). Rather, by Plaintiff's own admission, Cigna agreed to cover the costs of her bariatric surgery and did, in fact, cover those costs. Plaintiff cites no authority that, under these circumstances, a plan administrator breaches its fiduciary duty by granting a participant's request for future medical benefits under the Plan and then paying benefits as requested.

Further, even assuming *arguendo* that Cigna made a material misrepresentation that Plaintiff qualified for the bariatric surgery under Coverage Policy Number 0051, Plaintiff cannot show that she reasonably relied on any such representation. *See Van Loo,* 703 Fed. Appx. at 394; *Moore*, 458 F.3d at 433-434. As noted above, Coverage Policy Number 0051 itself expressly states that it is "not [a] recommendation[] for treatment and should never be used as treatment guidelines." (Doc. No.

29-1 at PageID# 866.) In light of this disclaimer, Plaintiff cannot show that she reasonably relied on Cigna's coverage determination in making her decision to undergo bariatric surgery. In addition, the Court notes that, by her own admission, Plaintiff's failure to meet the requirements of Coverage Policy Number 0051 was evident on the face of her own medical records. Specifically, Plaintiff alleges that "[t]he medical records and evidence produced to CIGNA Healthcare . . . included: (1) a registered dietician visit of February 1, 2013; (2) [a] registered dietician visit of March 15, 2013, and (3) a registered dietician visit of October 22, 2013." (*Id.* at ¶ 40.) Plaintiff alleges that this medical evidence "did not strictly fulfill the requirements of" Coverage Policy Number 0051 because it did not demonstrate "a minimum of 3 consecutive months (89+ days)" of participation in a supervised weight management program, "as February, March, and October [2013] are nowhere near consecutive." (*Id.* at ¶ 41.) Plaintiff does not allege that she did not know or have access either to the dates of these dietician visits or to Coverage Policy Number 0051. As such, Plaintiff has failed to plead facts sufficient to show that it was reasonable for her to rely on Cigna's finding that she medically qualified for the surgery under Coverage Policy Number 0051, since she could have determined this herself by checking her own medical records against the requirements of that Policy.

Accordingly, and for all the reasons set forth above, the Court finds that Plaintiff's breach of fiduciary duty claim against Cigna under § 502(a)(3) is subject to dismissal for failure to state a claim upon which relief may be granted.

### b. Equitable Estoppel

Plaintiff also alleges an equitable estoppel claim against Cigna under § 502(a)(3). Specifically, in Count IV, Plaintiff alleges that Cigna "made promises to [her] that she met medical necessities for a surgical procedure" even though she "did not meet the requirements." (Doc. No. 29

at ¶¶ 119, 120.)  She further alleges that she "relied upon the Defendant's representations and suffered severe and drastic injuries as a direct result of her reliance." (*Id*.)  Plaintiff alleges that Cigna should therefore be "equitably estopped from seeking enforcement to have [her] reimburse [Cigna] for medical expenses they incurred which should never have been incurred." (*Id*. at ¶ 121.)

The Sixth Circuit has recognized that promissory estoppel is a viable theory in ERISA welfare benefit actions.  *See Moore*, 458 F.3d at 428-429; *Sprague v. Gen. Motors, Inc*., 133 F.3d 388, 403 (6th Cir.1998).  An equitable estoppel claim under ERISA consists of the following elements:

> (1) [T]here must be conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment.

*Stark v. Mars, Inc*., 518 Fed. Appx 477, 480 (6th Cir. 2013) (citation omitted).

The Sixth Circuit has interpreted the second element—whether the party to be estopped was aware of the true facts—as "requiring the plaintiff to demonstrate 'either intended deception or such gross negligence as to amount to constructive fraud.'" *Deschamps v. Bridgestone Americas, Inc. Salaried Employees Ret. Plan,* 840 F.3d 267, 274 (6th Cir. 2016) (quoting *Paul v. Detroit Edison Co. & Mich. Consol. Gas Co. Pension Plan*, 642 Fed. Appx 588, 593 (6th Cir. 2016)).  Thus, the defendant's actual awareness of the misrepresentation is not required, as "this element has been interpreted broadly to allow for relief when plaintiffs show mere gross negligence." *Id.* at 274 n.6. However, it is not sufficient to show that a company "made an honest mistake, that in other words it was guilty of misfeasance, not the malfeasance that estoppel requires." *Crosby v. Rohm & Haas Co*., 480 F.3d 423, 431 (6th Cir. 2007).  *See also, Zirbel v. Ford Motor Co*., 980 F.3d 520, 524 (6th Cir. 2020) (finding no equitable estoppel where, although defendant miscalculated plaintiff's lump sum

retirement payment, defendant "did not know that it had the wrong number" and "[a]t most, Zirbel has shown that the company made a mistake—that it was guilty of misfeasance, not the malfeasance that estoppel requires); *Geith v. Sprint Communications Co. L.P.*, 2014 WL 2803065 at *3 (N.D. Ohio June 19, 2014) (holding the plaintiff could not establish equitable estoppel because the evidence showed that the defendant "made a mistake, nothing more," when it incorrectly informed the plaintiff that he was entitled to an annuity under "special early retirement").

Here, the Court finds that Plaintiff has failed to allege sufficient facts in the Second Amended Complaint to satisfy the second element of this test, i.e., that Cigna was "aware of the true facts." Specifically, Plaintiff has not alleged facts from which it could be inferred that Cigna engaged in either intended deception or such gross negligence as to amount to constructive fraud. At most, Plaintiff has alleged that Cigna made an honest mistake when it incorrectly informed her that she satisfied all of the requirements for bariatric surgery under Coverage Policy Number 0051. Consistent with the authority cited above, such allegations are insufficient to show that Cigna's actions constituted such gross negligence as to amount to constructive fraud to satisfy the second element of her equitable estoppel claim.

Additionally, and for the same reasons set forth in connection with Plaintiff's breach of fiduciary duty claim, the Court further finds that Plaintiff has failed to plead facts sufficient to show the fifth element of her equitable estoppel claim, i.e., that she "reasonably or justifiably rel[ied] on the representation to [her] detriment." *Stark*, 518 Fed. Appx at 480. As discussed above, Coverage Policy Number 0051 contained an express disclaimer it is "not [a] recommendation[] for treatment and should never be used as treatment guidelines." (Doc. No. 29-1 at PageID# 866.) Further, Plaintiff's failure to meet the requirements of that policy was evident on the face of her own medical

records, e.g., that her registered dietician visits from February, March, and October 2013 failed to demonstrate "a minimum of 3 consecutive months (89+ days)" of participation in a supervised weight management program, as required by the policy. As such, Plaintiff has failed to plead facts sufficient to show that it was reasonable for her to rely on Cigna's finding that she medically qualified for the surgery under Coverage Policy Number 0051.

Accordingly, and for all the reasons set forth above, the Court finds that Plaintiff's equitable estoppel claim against Cigna under ERISA § 502(a)(3) is subject to dismissal for failure to state a claim upon which relief may be granted.[8]

### c.      Declaratory Relief

Finally, in Count V, Plaintiff seeks a declaration that she is not required to reimburse Cigna for any medical expenses "they unilaterally and improperly agreed to assume responsibility to pay." (Doc. No. 29 at ¶ 126.) Because Plaintiff fails to state a claim for relief against Cigna under either ERISA §§ 502(a)(1)(B) or (a)(3), the Court finds that her claim for declaratory relief fails as well.

### 3.      Conclusion

Accordingly, and for all the reasons set forth above, Cigna's Motion to Dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. No. 33) is granted.

### C.      Defendants Davda and Breon's Motion to Dismiss

In Count II of the Second Amended Complaint, Plaintiff alleges that Nurse Breon and Dr. Davda "were assigned to review [Plaintiff's] file for pre-authorization and approval of the procedure

---

[8] Cigna does not argue that Plaintiff's § 502(a)(3) claims should be dismissed because they are "repackaged claims" for benefits under § 502(a)(1)(B). *See Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 373 (6th Cir. 2015) (*en banc*) ("Impermissible repackaging is implicated whenever, in addition to the particular remedy provided by Congress, a duplicative or redundant remedy is pursued to redress the same injury.") Thus, the Court does not address that issue herein.

as medically necessary." (Doc. No. 29 at ¶ 33.) She claims that these Defendants "were required to apply their medical knowledge to review [Plaintiff's] medical records . . . and the guidelines of CIGNA health insurance to determine the medical necessity of her requested procedure." (*Id.* at ¶ 101.) Plaintiff claims Nurse Breon and Dr. Davda "failed to properly apply the express language of the insurance policy" and that their "inactions resulted in approval of a medical procedure for which [Plaintiff] did not qualify." (*Id.* at ¶¶ 102, 103.) She further alleges that these Defendants "breached their duties as medical professionals and as expert employees of CIGNA." (*Id.* at ¶ 104.) Plaintiff "seeks to enforce her rights under the plan pursuant to 29 U.S.C. § 1132(a) and a determination she should not have to repay medical expenses which should not have been incurred." (*Id.* at ¶ 107.)

The Second Amended Complaint does not specify whether Plaintiff's claims against these Defendants are brought under ERISA §§502(a)(1)(B) and/or 502(a)(3). In separate Motions to Dismiss, Dr. Davda and Nurse Breon argue that, whether brought under either Section, Plaintiff's claims are subject to dismissal as a matter of law for a variety of reasons. (Doc. Nos. 41, 43.) In her Briefs in Opposition, Plaintiff fails to either identify the specific section of ERISA § 502(a) under which she purports to bring her claims, or directly address any of the substantive arguments raised by these Defendants. (Doc. Nos. 44, 48.) Rather, Plaintiff argues generally that her claims survive because (1) her bariatric surgery was not "medically necessary" and therefore does not constitute a "benefit" for which Cigna has a right of subrogation and/or reimbursement; (2) Dr. Davda and Nurse Breon are liable under state law agency and/or vicarious liability principles; and (3) Cigna had knowledge of Plaintiff's state court medical malpractice action but failed to intervene. (*Id.*)

For the following reasons, the Court finds that, to the extent Count II asserts claims against Dr. Davda and Nurse Breon under § 502(a)(1)(B), such claims fail to state a claim upon which relief

may be granted. As Defendants correctly note, the Sixth Circuit has declined to recognize claims against medical professionals that are employed by the company that administers a plaintiff's insurance benefits under § 502(a)(1)(B) because "the proper defendant in an ERISA action concerning benefits is the plan administrator." *Hogan v. Jacobson*, 823 F.3d 872, 884 (6th Cir. 2016) (quoting *Riverview Health Inst. LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 522 (6th Cir. 2010)). Here, the Second Amended Complaint does not allege that either Nurse Breon or Dr. Davda are plan administrators, designated claim administrators, or named fiduciaries under the Plan. Accordingly, and absent any meaningful argument to the contrary,[9] the Court finds that Plaintiff fails to state claims against Nurse Breon or Dr. Davda under § 502(a)(1)(B).

Further, even assuming *arguendo* that Plaintiff had sufficiently pled a basis to assert § 502(a)(1)(B) claims against these individual Defendants, any such claims would be subject to dismissal for the same reasons set forth *supra* in connection with Cigna's Motion to Dismiss Count I. Specifically, the Court finds that Plaintiff received "benefits" within the meaning of the Plan when she requested and accepted payment by the Plan for her bariatric surgery and related care. Because the subrogation and lien provisions apply to "any benefits paid under the Plan," Plaintiff cannot state a claim under § 502(a)(1)(B) to enforce her alleged right to "not have to repay medical expenses which should not have been incurred" on the grounds that the benefits were paid for a surgery that was allegedly not medically necessary.

Further, to the extent Count II asserts a claim for breach of fiduciary duty under § 502(a)(3), the Court finds that such claim is subject to dismissal for the same reasons set forth *supra* in

---

[9] Plaintiff does not acknowledge or address the Sixth Circuit's holding in *Hogan* or otherwise make any meaningful argument why *Hogan* should not apply to the instant case.

connection with Cigna's Motion to Dismiss Count III. Specifically, the Court finds that Plaintiff has failed to sufficiently plead that Dr. Davda and/or Nurse Breon made a material misrepresentation regarding her bariatric surgery, in light of the Plan's disclaimer that "Coverage Policies are not recommendations for treatment and should never be used as treatment guidelines." (Doc. No. 29-1 at PageID# 866.) Further, even assuming *arguendo* that Dr. Davda and/or Nurse Breon did make a material misrepresentation, the Court finds that Plaintiff cannot show reasonable reliance. *See Van Loo*, 703 Fed. Appx. at 394; *Moore*, 458 F.3d at 433-434. As discussed above, in addition to the fact that Coverage Policy Number 0051 expressly states that it should not be construed as a treatment recommendation or used as treatment guidelines, Plaintiff's failure to strictly meet the requirements of the policy was evident on the face of her own medical records, e.g., that her registered dietician visits from February, March, and October 2013 failed to demonstrated "a minimum of 3 consecutive months" of participation in a supervised weight management program as required by the policy. [10]

Accordingly, and for all the reasons set forth above, the Court finds that Plaintiff's claims against Dr. Davda and Nurse Breon under ERISA §§ 502(a)(1)(B) and 502(a)(3) are subject to dismissal for failure to state a claim upon which relief may be granted. These Defendants' Motions to Dismiss (Doc. Nos. 41, 43) are, therefore, granted.

---

[10] Plaintiff's argues that "it was Jessica Breon, R.N. and Dr. Davda who made the improper determination that [Plaintiff] qualified and that Cigna should pay for this procedure." (Doc. No. 48 at p. 13.) Plaintiff then cites Ohio law for the proposition that "an employer or principal is vicariously liable for the torts of its employees or agents under the doctrine of *respondent superior*." (*Id*. at p.11-12.) This argument, however, would only be relevant to claims *against Cigna* and *not* to Plaintiff's claims against either Nurse Breon and/or Dr. Davda. Moreover, as Defendants correctly note, the Second Amended Complaint does not allege any claims against Cigna under the doctrine of *respondent superior* and Plaintiff cannot amend her complaint to add such claims via a brief in opposition. Thus, Plaintiff's arguments regarding the application of *respondeat superior* are rejected. The Court also rejects Plaintiff's argument that "Cigna had the knowledge of the state court proceedings and was directly advised of their right to intervene into the state court proceedings which they declined to do instead of asserting any alleged rights." (Doc. No. 44 at pp. 12-13; Doc. No. 48 at pp. 13-14.) Plaintiff does not adequately explain how Cigna's knowledge of the state court medical malpractice action bears any relevance to her ERISA claims against Nurse Breon and Dr. Davda.

**IV.     Conclusion**

Accordingly, and for all the reasons set forth above, Defendants' Motions to Dismiss (Doc.

Nos. 33, 41, 43) are GRANTED.

**IT IS SO ORDERED.**


                                                     _s/Pamela A. Barker_
                                                     PAMELA A. BARKER
Date:  June 29, 2021                                 U. S. DISTRICT JUDGE